[L. A. No. 2882. Department One.—August 30, 1911.]

In the Matter of the Estate of SUSAN GLASSELL MITCHELL, Deceased.

WILL—CONSTRUCTION—INTENTION OF TESTATOR.—The cardinal rule for the construction of all wills is to ascertain the intention of the testator, and this intention is to be ascertained from the words of his will, taking into view, when necessary or appropriate, the circumstances under which it was made, if there is an uncertainty in its language.

ID.—TRUST—PRECATORY CLAUSE HOW CONSTRUED.—Precatory words may or may not create a trust, according as they are used, and whether, in any particular will, they have been used for this purpose will depend upon the construction to be given to that will. The question for determination is, whether the devisee or legatee is the beneficiary, or merely is trustee for others, of the gift bestowed upon him; whether the wish or desire or recommendation that is expressed by the testator is meant to govern the conduct of the party to whom

it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of that party, leaving it, however, to the party to exercise his own discretion. In order to make him a trustee, it must appear that the testator intended to impose an imperative obligation upon him, and for that purpose has used words which exclude the exercise of discretion or option in reference to the act in question.

ID.—REQUEST ADDRESSED TO LEGATEE.—While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms. *Prima facie*, a mere request, or an expression of hope, or confidence or expectation, does not impart a command.

ID.—ABSOLUTE DISPOSITION OF RESIDUUM TO DAUGHTER.—EXPRESSION OF RELIANCE ON LEGATEE TO PROVIDE FOR GRANDDAUGHTER.—Where a testatrix bequeaths her entire residuary estate to her daughter, "to be held and owned by her in her absolute right," a clause in her will that she relies upon such daughter "to make at all times suitable and adequate provision" for a granddaughter, believing that such daughter will give to the granddaughter the love and care of a mother, and that she will, both during the granddaughter's youth and upon her arriving at majority, "amply and carefully make provision for her," does not create a trust in favor of the granddaughter. There is nothing in the circumstances surrounding the will in question, that requires a different construction or indicates a different intent.

ID.—PRECATORY CLAUSE PRECEDING RESIDUARY CLAUSE.—The fact that the precatory clause in the will preceded the clause making the disposition of the residuum to the daughter, does not warrant the inference that the testatrix believed that the precatory clause did create a trust in favor of the granddaughter, and that she used the words descriptive of the residuum to indicate what would be left after making adequate provision for the granddaughter.

APPEAL from a judgment of the Superior Court of Los Angeles County distributing the estate of a deceased person. James C. Rives, Judge.

The facts are stated in the opinion of the court.

McNutt & Hannon, and George P. Adams, for Appellant.

E. A. Meserve, and Horace S. Wilson, for Respondent.

SHAW, J.—This is an appeal from a decree of final distribution of the estate of Susan G. Mitchell, deceased.

The decree distributes the entire residue of the estate to Lucie M. Lambourn. The appellant claims that the will of the deceased creates a trust in the property, in her favor, to the extent of a suitable and adequate provision for her maintenance. Whether or not it does, is the only question for determination.

The trust is not expressly declared, but is created, if at all, by a certain precatory clause in the will. The subject of precatory trusts was carefully considered by this court in *Estate of Marti,* 132 Cal. 666, [61 Pac. 964, 64 Pac. 1071], and *Kauffman* v. *Gries,* 141 Cal. 295, [74 Pac. 846], and certain principles governing such cases were thereby established. The primary rule is stated in both cases as follows: "The cardinal rule for the construction of all wills is to ascertain the intention of the testator; and this intention is to be ascertained from the words of his will, taking into view, when necessary or appropriate, the circumstances under which it was made," if there is an uncertainty in its language. (Civ. Code, sec. 1318.)'

The estate of the testatrix was of the value of about two hundred thousand dollars. She left no descendants, except one daughter, the respondent, Lucie M. Lambourn, and the appellant, Lucille R. Bedford, who is the child of Eileen G. Bedford, a deceased daughter. The first three items in the will give to Lucie M. Lambourn: 1. The residence of the testatrix; 2. The furniture therein and the clothes and jewelry, and 3. Certain shares in a corporation which the appraisement states to be of no value. The alleged trust arises, as it is contended, from the provisions of items 4 and 5, which are as follows:—

"Item 4. I bequeath unto my granddaughter, Lucille Richmond Bedford (christened Lucille Toland Bedford), child of my deceased daughter, Eileen G. Bedford (nee Mitchell), the sum of $5.00, and I rely upon my daughter, Lucie M. Lambourn, to make further and suitable necessary provision for my said grand-daughter. It is the intention of my daughter to adopt my said granddaughter as her own child, in the event that the consent thereto of the father of my said granddaughter (Charles A. Bedford), can be obtained. In which event, as her own child, I am sure my daughter would adequately provide for my granddaughter Lucille. In the event that

the consent of said Charles A. Bedford, father of my said granddaughter, cannot be obtained so that my daughter can legally adopt her as her own child my said granddaughter Lucille, I rely upon my daughter to make at all times suitable and adequate provision for my said granddaughter, believing that my daughter Lucie will give to Lucille the love and care of a mother, and that she will, both during Lucille's youth and upon her arriving at majority, amply and carefully make provision for her.

"Item 5. I devise and bequeath to my said daughter, Lucie M. Lambourn, all the rest, residue and remainder of my .estate of whatsoever nature and wherever situated, to be held and owned by her in her own absolute right."

Taking up first the .question of the effect of these provisions as found from the language alone, without aid from the attending circumstances, we find the general rules of interpretation laid down in the *Estate of Marti,* 132 Cal. 666, [61 Pac. 964, 64 Pac. 1071], after a full consideration. This case was followed in *Kauffman* v. *Gries,* 141 Cal. 295, [74 Pac. 846], and we see no reason for departing therefrom. They are thus stated: "Precatory words may or may not create a trust, according as they are used, and whether, in any particular will, they have been used for this purpose will depend upon the construction to be given to that will. The question for determination is, whether the devisee or legatee is the beneficiary, or merely a trustee for others, of the gift bestowed upon him; whether the wish or desire or recommendation that is expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of that party, leaving it, however, to the party to exercise his own discretion. In order to make him a trustee, it must appear that the testator intended to impose an imperative obligation upon him, and for that purpose has used words which exclude the exercise of discretion or option in reference to the act in question. Mr. Bispham says (Principles of Equity, sec. 71): 'The English rule now is, that precatory words are not to be regarded as imperative, unless it is plain from the context that the testator so intended them.' 'When property is given absolutely, and without restriction, a trust is not to be lightly imposed, upon ·

mere words of recommendation and confidence.' " (Page 669.) And again, on page 671, [61 Pac. 965], the opinion in *Estate of Marti,* proceeds: "While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms. . . . *'Prima facie,* a mere request, or an expression of hope or confidence or expectation, does not import a command.' "

Appellant's counsel rely upon the decision of the supreme court of the United States in *Colton* v. *Colton,* 127 U. S. 300, [8 Sup. Ct. 1164, 32 L. Ed. 138]. If that decision was in any particular inconsistent with our own decisions on the subject, it would not be binding authority. The interpretation of wills is not a question upon which the federal courts control the state courts. But we do not find it inconsistent. The same rules are stated in that decision, as in our own. The court says: "It must appear that the words were intended by the testator to be imperative." And, quoting from *Warner* v. *Bates,* 98 Mass. 277, the court says that the difficulties of interpretation "can always be overcome by bearing in mind and rigidly applying in all such cases the test, that to create a trust it must clearly appear that the testator intended to govern and control the conduct of the party to whom the language of the will is addressed and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of the discretion which he intended to repose in the legatee or devisee."

The language in this will cannot reasonably be understood to indicate an intention to create a trust or to direct or control the residuary devisee as to the manner of her use and enjoyment of the property devised to her. On the contrary, taking the provisions as a whole, there clearly appears an intention to leave everything concerning the welfare of Lucille to the judgment, discretion, and affection of the daughter Lucie. The words chosen indicate confidence and faith in her daughter's kindly disposition, rather than an intent to control and direct her. There is nothing which shows an intent to place a limitation or charge upon the estate given to her. She says: "I rely upon my daughter" to make suitable provision, believing that she will give to Lucille the love and care of a mother and

amply and carefully provide for her. There is nothing imperative in any of the language used nor anything indicating more than a wish or desire, accompanied with a reliance, belief, and confidence that the daughter would fulfill such wish in such manner as her own judgment should dictate and without any restrictions. Having thus expressed her confidence and reliance she follows it with a devise of the entire residue to the daughter "to be held and owned by her in her absolute right." The provisions as a whole are utterly inconsistent with an intent to qualify the estate given to the daughter, or to impose any charge thereon in the nature of a trust.

The surrounding circumstances do not require a different construction or indicate a different intent. The case was submitted and decided upon a demurrer to the contest or claim of the appellant, so that, for the purposes of this decision, the facts alleged therein must be considered as true. The will was made on October 9, 1907. Lucille was then about three years of age. Her mother had died the previous April. In 1901, the testatrix made a will giving to Eileen, appellant's mother, a certain tract of land, and the income of one half of the residue of her estate. The testatrix at that time believed that she owned said tract of land in fee, and, it is alleged, although the allegation appears to be without significance, that she held one half thereof in trust for the use of Eileen. No facts are alleged which would be sufficient to create such a trust. In May, 1907, after Eileen's death, the testatrix made another will giving to the respondent, Lucie, the same specific legacies as in her final will, and the residue to Lucie and Lucille, in equal parts. On August 9, 1907, she made a third will, the same as that of May, 1907, excepting that the one half of the residue, given in the former will to Lucille, was given to a trustee in trust for Lucille. After March, 1906, Lucille always remained in the custody of the testatrix ,who desired to adopt her, but was prevented from doing so by her own illness and the absence from the state of Lucille's father. Before the death of Eileen the testatrix had sold the whole of the land above mentioned as having been once devised to Eileen, for the sum of fifty-one thousand dollars. It is alleged that on October 9, 1907, when she made the will here in controversy, the testatrix believed that she had owned said land in fee, and that she believed that one half of the proceeds

thereof "was a trust fund in her hands for said Lucille as the only child and heir at law of the said Eileen." No explanation whatever is given for the existence of these two inconsistent beliefs, nor is any reason given for the latter belief, which seems to have had no foundation in fact. It is alleged that Lucille has no property, except her alleged interest in the supposed trust fund, or in the land from which it was derived, and that her father had not, when said last will was made, any estate out of which to make suitable provision for her, all of which the testatrix at that time well knew.

The fact that the testatrix made so many wills and that the one of August, 1907, disposed of one half of the residue to a trustee in trust for Lucille, showed that she had some knowledge about wills, and understood the nature of trusts and something of the forms of expression used in creating them. So far as these facts have any bearing, they would seem to point to a design not to establish a trust in favor of Lucille, since the testatrix must have been familiar with the proper form of words to create a trust and could easily have done so if she had so desired. There is no attempt to allege an intention by the testatrix to make the provision which it is claimed constitutes a declaration of trust, a substitute for the supposed trust fund aforesaid. So far as appears, the giving to Lucille of the trust which she claims under the will, would not prevent or estop her from claiming the trust fund also. It does not appear that she had in fact any right to such trust fund and there is no equity shown in her, in the nature of a property right, which could in any way affect the interpretation of the will. The circumstances alleged are clearly insufficient to convert that which, upon its face, appears to be merely an expression of a preference and of confidence and reliance on the fidelity and affection of her daughter toward Lucille, into an express or implied command or direction to her with respect to the use by her of the property given to her by the will "in her own absolute right," as it declares.

The appellant argues that item 5 gives to Lucie in terms only the "residue and remainder" of the estate, and that, as it does not precede, but follows, item 4 containing the alleged precatory trust, and as the specific legacies, except the five dollars to Lucille, are all given to Lucie, there is a necessary inference that the testatrix believed that the precatory clause

did create a trust in the property in favor of Lucille, and that she used the words "residue and remainder" in item 5, to designate what would be left after making the adequate provision for Lucille, which she supposed was required by the precatory clause. There are two or three reasons against this view. In the first place, the language of item 4 cannot, by any reasonable stretch of construction, be held to be a gift or devise of any property or right, except of the five dollars. Leaving that out, there is much of confidence and reliance upon Lucie, that she will provide for and adopt Lucille, and love and care for her as a mother, but not a word which can be said to be a disposition of property, or a request, command or direction as to what she shall do in that behalf. That portion of item 4 would not call for the designation of any part of the estate as "residue." This argument assumes that whatever provision Lucie is to make for Lucille is to be made out of property which somehow is given to Lucie by the terms of the will. The specific legacies to Lucie are admitted to be insufficient and it is not claimed that they were considered by the testatrix as subject to any provision in favor of Lucille. The only other disposition to Lucie is that, in item 5, which gives her the "residue and remainder" in her own absolute right. Therefore the effect of the fifth item is to vest in Lucie the title to the whole of the estate except the property specifically devised, including that out of which Lucille is to be provided for, if her claim is correct. This would make it absolutely necessary that item 4 should be construed to create a charge upon the residue of the property and not merely to indicate confidence in Lucie. It clearly does not bear that meaning, and if it did, Lucie would not have the residue in absolute right. Furthermore, the circumstances alleged furnish a satisfactory explanation of the use of these words in item 5, without the suggested inference. She had shortly before made two other wills of the same general form as the last. In each she had given Lucie the same specific devise and legacies as in the last, and presumably in the same language. In each she had made 'provision for Lucille. In that of May, 1907, she gave her one half the residue, absolutely. That of August, 1907, gave the same one half to a trustee for the use of Lucille. Evidently something must have occurred about that time to change her intentions concerning Lucille and in consequence she made the

CLX Cal.—40

last will. It follows the previous forms and was apparently modeled thereon. The same specific dispositions to Lucie are repeated. Coming to the part relating to Lucille, she gives her only five dollars and makes the declaration that she relies on Lucie to provide for her and adopt her. Then in item 5, still using the former phraseology, she gives the "residue" to Lucie, evidently referring, as she did in the previous wills, to the residue after deducting the specific devise and the specific legacies. And although the result was that everything was given to Lucie except the five dollars, it is nevertheless technically accurate to describe that portion as the residue of the estate. From all this it is reasonable to conclude that the testatrix was following the form of the previous wills and using the same language so far as it was applicable, and that it was because of this that the clause expressing confidence and reliance was placed before the residuary clause, and not because the testatrix believed that she was creating a trust for Lucille to be taken from the residue.

The decree of distribution is affirmed.

Sloss, J., and Angellotti, J., concurred.