[Civ. No. 15043. Second Dist., Div. Two. Dec. 28, 1945.]

Estate of LEONARD CROMWELL MILES, Deceased. ADELE E. MILES et al., Appellants, v. FLORA E. MILES, Executrix, etc., Respondent.

338

Glenn S. Roberts for Appellants.

Coleman E. Stewart for Respondent.

WILSON, J.—During the probate of the estate of the decedent several controversies arose between the decedent's widow and his two children by a former marriage, out of which grew the several appeals herein.

The decedent left a holographic will reading as follows: "Santa Barbara July 13, 1938 I, Edward Cromwell Miles, do make this as my last will & Testament. It is my wish to leave all my goods & chattels to my wife Flora Stewart Miles. She to act as executor without bond. It is my wish that in a reasonable time she give to Adele my daughter $500.00 and to Kenneth my son $100.00. Leonard C. Miles" It was stipulated that the will disposed of personal property only and that decedent died intestate as to the real property herein involved.

The facts necessary to be considered in determining the several appeals are as follows: In February, 1933, prior to the entry of a final decree of divorce dissolving the marriage of decedent and his first wife, respondent and decedent were contemplating marriage. They determined to purchase a parcel of property in Santa Barbara for approximately $7,200. Decedent gave respondent $1,200 in cash which was applied on the purchase price and respondent paid the entire balance with her separate funds. The property was conveyed to her as her separate property. Decedent and respondent were married in March, 1933, and resided on said property. After their marriage a joint bank account was opened. Respondent deposited therein rents amounting to $125 per month which she received from her separate property, and decedent deposited $100 a month in said account for living expenses but he did not draw on the account. He maintained a separate bank account out of which he paid his own personal expenses. This method of handling their funds was continued until the death of decedent, the parties never having had any substantial reserve in the bank account and no property having been acquired out of the earnings of decedent.

Some time in May or June, 1940, decedent and respondent decided to purchase a bungalow court, which is the property involved in this proceeding. At that time Coleman Stewart, a son of respondent, owned another parcel of real property subject to a life estate of his mother. Decedent, respondent, and Coleman Stewart valued the two parcels of property owned by respondent and Coleman Stewart at $15,000. It was agreed that the bungalow court should be purchased and that decedent should pay $5,000, one-third of the valuation placed on said parcels, and that the three persons named should each own a one-third interest in the bungalow court.

The latter property was finally purchased for $32,500. The two parcels of real property above mentioned were sold for $12,500. Said sum was paid on the purchase price of the bungalow court and two promissory notes for the total sum of $19,000 were executed by respondent and decedent, secured by trust deeds on said property. Respondent paid $1,073 in cash out of her separate funds, covering the balance of the purchase price and the incidental expenses relating to the purchase. The property was then conveyed to decedent and respondent and they in turn conveyed an undivided one-third interest to Coleman Stewart. Decedent paid $615 to the real estate agent as his commission. This sum he borrowed from a bank, giving as collateral therefor stocks which he owned prior to his marriage. Decedent and respondent thereafter lived in one unit of the bungalow court and the income from the court was placed in a joint tenancy bank account out of which all payments were made on the encumbrances.

In June, 1941, decedent, having become in arrears in the alimony payable to his first wife, conveyed to respondent his one-third interest in the real property and transferred to her his corporate stock and bank accounts for the purpose of preventing the satisfaction of his first wife's claim for delinquent alimony. Thereafter he made a settlement of the claim for alimony and respondent reconveyed to him all of his property excepting the interest in the bungalow court. Decedent repeatedly requested respondent to reconvey said interest in the court but respondent refused to do so. Decedent asked her if she would convey said interest to him if he would sign a promissory note in her favor for $4,500. She executed a grant deed to him for said interest but decedent did not execute the note. Such interest, if any, as he received by the deed remained vested in him until his death.

The appeals are from (1) a decree of partial distribution; (2) a decree determining interest in real property; (3) an order allowing a claim of respondent against the estate; (4) a decree construing the will; (5) an order denying appellants' motion to continue the hearing of the final account; (6) an order settling and allowing the final account; (7) the decree of distribution. ▪ The two appeals last mentioned not having been discussed in appellants' brief, the same will be affirmed. ▪ The order denying a continuance is not appealable.

1. *The decree determining interest in real property.* The

court held that the one-third interest in the property in question standing in the name of decedent at the time of his death was community property and, since he died intestate as to real property, it passed to respondent pursuant to section 201 of the Probate Code. Appellants claim that said interest was his separate property and should be distributed as provided in section 221 of said code.

Inasmuch as the bungalow court (1) was acquired by decedent and respondent after marriage, and (2) was conveyed to them as "husband and wife" it is presumed to have been community property. (Civ. Code, § 164.) Unless this presumption has been satisfactorily controverted by the evidence the finding of the trial court must stand. (*Estate of Sehabiague*, 47 Cal.App.2d 793, 797 [119 P.2d 30]; *Falk* v. *Falk*, 48 Cal.App.2d 762, 767 [120 P.2d 714].) Before the property was acquired decedent said it was his intention to pay for his one-third interest. He never did so. After the court was purchased he agreed to execute a note for $4,500 to respondent if she would convey a one-third interest to him, but he never signed the note. The only amount paid by him on the entire transaction was the real estate broker's commission amounting to $615. He borrowed that sum from the bank, $300 of which remained unpaid at his death and the executrix paid said sum as a claim against the estate. The value of such labor as he expended in the upkeep of the court was community property. It is clear that respondent did not intend to make a gift to decedent when she executed the deed to him but made the conveyance upon his promise to pay her for it by giving her a promissory note for the sum mentioned. The presumption declared in section 164 of the Civil Code was not only not overcome but was reinforced by the evidence.

Neither decedent's contribution of time and labor to the repair and maintenance of the bungalow court nor his joining with respondent in the execution of notes and deeds of trust to secure payment of the purchase price gave him an interest in the property. (*Oldershaw* v. *Matteson & Williamson Mfg. Co.*, 19 Cal.App. 179, 183 [125 P. 263]; *Hency* v. *Pesoli*, 109 Cal. 53, 61 [41 P. 819].) The income from the property which was applied on the purchase money notes was of the same character as the property itself. (*Boyd* v. *Oser*, 23 Cal.2d 613, 619 [145 P.2d 312].)

2. *Respondent's claim against the estate.* Respondent filed a claim for $4,400 representing a purported balance due

pursuant to the agreement of decedent to pay $5,000 for an undivided one-third interest in the bungalow court. The difference of $600 represented the amount paid by decedent as commission to the real estate broker (found by the court to have been $615).

When decedent, respondent, and Coleman Stewart were discussing the purchase it was agreed, as above related, that decedent would contribute $5,000 for which he would receive a one-third interest in the property. This discussion took place about June, 1940. Decedent not having paid his share, said sum was advanced by respondent. Decedent's agreement was not in writing; hence at the time of his death in 1943 the claim was barred by the statute of limitations (Code Civ. Proc., § 339, subd. 1) if not waived in some manner by him. The only evidence that he made a subsequent promise to pay was given by respondent (claimant) when she testified that in 1942 he agreed to give her the promissory note mentioned in return for the deed which she executed. This evidence was properly excluded by the trial court insofar as it related to the claim (Code Civ. Proc., § 1880, subd. 3), thus leaving it without support unless a letter written by decedent may be construed as an acknowledgment in writing of the debt.

When decedent became in arrears in his alimony payments to his first wife he consulted respondent's son, Coleman Stewart, as an attorney, and the latter advised him to negotiate with his divorced wife's attorneys and attempt to reach a settlement with her. Decedent wrote a letter to said attorneys in June, 1941, in which he referred to the purchase of the bungalow court and stated that respondent had "quite rightly demanded that I secure my obligation to her." The terminology of this statement is not such an acknowledgment of the debt as to waive the statute of limitations. (Code Civ. Proc., § 360.) The acknowledgment must be a direct, unqualified, and unconditional admission of a debt which a party is willing to pay. (*Curtis* v. *Sacramento,* 70 Cal. 412, 414 [11 P. 748].) Said letter was merely a statement that respondent had demanded security.

For another reason the letter is inadequate as a waiver. It was addressed and delivered to attorneys with whom decedent was attempting to settle an indebtedness then owing by him to a third party who had no connection with the bungalow court transaction. Since the purported acknowl-

edgment of the indebtedness was not made to respondent or to her agent it is insufficient to constitute an implied promise to pay and to take the debt out of the statute of limitations. (*Estate of Azevedo,* 17 Cal.App.2d 710, 712 [62 P.2d 1058] ; *Biddel* v. *Brizzolara,* 64 Cal. 354, 355 [30 P. 609] ; *Visher* v. *Wilbur,* 5 Cal.App. 562, 570 [90 P. 1065, 91 P. 412].)

Nor does decedent's delivery to Coleman Stewart of a copy of the letter alter the result. Decedent had consulted Stewart as an attorney and as a result of the advice received by him the letter was written. Stewart was not then acting as the agent of his mother, the respondent, but as attorney for decedent, and the delivery of the copy of the letter to him was a natural consequence of the relation of attorney and client.

3. *Construction of the will and decree of partial distribution.* If the trial court properly construed the will the decree of partial distribution is correct and the appeals from the two orders may be considered together. ▮ The question is whether decedent's wish expressed in the will that certain sums of money be given to his children is dispositive or precatory. When the disposition of property is indicated in a will by the words "wish" or "desire" it is a dispositive command, testamentary in character, and not precatory. (*Estate of Tooley,* 170 Cal. 164, 167 [149 P. 574, Ann.Cas. 1917B 516].) ▮ A wish or request of the testator for the disposition of his estate directed to the executor is a command, but if addressed to the legatee it will not be construed as a limitation on the estate given in absolute terms. (*Estate of Marti,* 132 Cal. 666, 671 [61 P. 964, 64 P. 1071].) ▮ The words "it is my wish to leave all my goods & chattels to my wife" is a dispositive expression evincing the will of the testator and declaring his mind as to the manner in which he would have his estate disposed of after his death. (*Estate of Wood,* 36 Cal. 75, 80.) There is no doubt that the "wish" of decedent herein was a declaration that his wife should receive all of his "goods & chattels." This being true, his "wish that in a reasonable time she give" certain sums to his children was precatory. By the first portion of the will he had bequeathed his property in such manner that title passed to his widow at his death, and title having passed it was not within the power of the testator to direct the manner in which she should dispose of the property.

The order allowing the claim of respondent is reversed with

directions to enter an order disallowing the same; the appeal from the order denying motion for continuance is dismissed; all other orders and decrees appealed from are affirmed. Each party will bear his own costs of appeal.

Moore, P. J., concurred.