[Civ. No. 7618. Third Dist. May 3, 1949.]

Estate of LILLIAN FERDUN, Deceased. ERNEST FERDUN et al., Appellants, v. JOHN H. PLUMMER, Respondent.

Ernest Ferdun, in pro. per., and Robert J. Mertz for Appellants.

Chester E. Watson for Respondent.

THOMPSON, J.—Charles F. Ferdun and Ernest Ferdun have separately appealed from a decree of final distribution in the estate of Lillian Ferdun, deceased. The appeals involve the construction of the language of the holographic will of the decedent. The appellants filed separate oppositions to the petition for distribution. The opposition of Charles, a nephew of the decedent, merely alleges that it was the *intent* of the testatrix, "as expressed in her will," to give to her brother, John H. Plummer, a life estate only in the "Addie Ferdun

vineyard,'' and that the fee title therein was devised to the five children of Ernest Ferdun. The amended opposition of Ernest Ferdun, who is the father of Charles, merely alleges, on information and belief, that the will fails to dispose of the real property of the estate, which should therefore pass to the heirs according to the rules of descent. On hearing, the probate court determined that the will devised to John H. Plummer, the brother of the testatrix, the fee to all real properties of the estate, and thereupon distributed the real estate as prayed for. There is no controversy regarding the distribution of the stocks, bonds, money or other personal property. From that decree the appeals were perfected.

The testatrix was a widow who died January 9, 1947, possessed of real and personal property of the aggregate value of $163,936.81. December 5, 1945, she executed her last holographic will. It contains the following language:

## "WILL

''This is my last will

Dated Dec 5—1945.

Everything I own I leave to my Brother, 'John Henry Plummer'—with the exception of Five (500) hundred dollars, I leave to very good friend Esther Chappins, also the same amount to her Brother Ben Scheideman, Five hundred dollars—

. . . [Here follow ten specific bequests of sums of money or designated items of personal belongings, to ten named heirs or friends.]

If John does not want my car, he then will give it to Lena Scheideman.

The Ferdun and Blodgett Vineyard, you can sell if you choose, but my advice is hang on to it, John.

The vineyard on Harney Lane, I call it the Addie Ferdun vineyard, you keep as long as you live, at the time of your death John leave it to Ernest Ferduns family—that is the 4 nephews and one niece Gladys.

Clarence Ferdun to be Executor of that ranch.

One of my Bonds 'E' I leave to Reta Kolb.

" " " One Thousand Bonds goes to Mrs. M. Brack Smith—

Everything else Bonds, Stock money and Etc goes to Brother John—

The Tractor, Truck and all other implements on the ranches, I own Three Fourths and Mrs. Blodgett (Florence) owns one fourth—

Signed Lillie or Lillian Ferdun

You will find all of my property clear, and money for everything

Put me away as near as Dear Sister Linnie was—

Lovingly
Lillian or Lillie Ferdun
#18999
Lillian Ferdun''

''(On Envelope attached) This is my will Lillie or Lillian at the time of my death my will is to be opened by my Brother John H. Plummer

Lillie or Lillian Ferdun''

Upon petition of John H. Plummer, the foregoing holographic will was admitted to probate in San Joaquin County, without opposition, on January 28, 1947, and the petitioner was appointed and qualified as administrator with the will annexed. In due time the inventory and appraisement and supplemental inventory and appraisement were filed, appraising the entire estate at $163,936.81, including four separate tracts of land of the aggregate value of $69,900. The balance of the estate consisted of stocks, bonds, note and deed of trust, money in banks, and personal belongings of the value of approximately $94,000. April 17, 1948, the petition for final distribution was filed, praying for distribution of all real property, in fee, to the brother, John H. Plummer, and of the remaining personal properties to the legatees and devisees in accordance with the provisions of the will. The oppositions to distribution of the real estate as prayed for were filed, as previously stated. A demurrer to the opposition of Charles F. Ferdun was sustained. After hearing, and arguments of respective parties, the court determined upon construction of the will, that the real properties were devised in fee to John H. Plummer; that the challenged language of the will with respect to the ''Addie Ferdun vineyard'' is precatory in effect and not controlling, and the court thereupon dismissed the oppositions. The real properties were distributed to Mr. Plummer in fee, and the remaining stocks, bonds, money in bank and personal belongings were distributed

to the legatees and devisees in accordance with the provisions of the will.

We are of the opinion the trial court correctly construed the provisions of the will, and that the real property in question was properly distributed in fee to the petitioner, John H. Plummer. We cannot agree with appellants' contention that the testatrix failed to devise the real property by the terms of the will and that she, therefore, died intestate as to such property. Reading the will as a whole, it is quite evident that the testatrix intended to thereby dispose of all of her real property consisting of four different tracts. First she said, "Everything I own I leave to my Brother, 'John Henry Plummer'—with the exception of . . . ." The exceptions which follow are special bequests to designated persons of money, bonds and personal effects. Then she addressed herself to her brother John with respect to certain mentioned real property, and offers him friendly advice in relation thereto, and makes a request that when he dies he "leave it [the Addie Ferdun vineyard] to Ernest Ferduns family." Regarding the "Ferdun and Blodgett Vineyard" she says, "you can sell it if you choose, but my advice is to hang on to it, John." Certainly that language does not limit or impair the first statement of the will that "Everything I own I leave to my Brother 'John Henry Plummer,' " with certain expressed exceptions of specified bequests of personal property. The following language is the only provisions of the will open to controversy. It reads: "The vineyard on Harney Lane, I call it the Addie Ferdun vineyard, you keep as long *as you live,* at the time of *your death John* [you] leave it to Ernest Ferduns family—that is the 4 nephews and one niece Gladys. Clarence Ferdun to be Executor of that ranch."

It will be observed that the preceding language is specifically addressed to her brother John. It appears to be an expression of her wish, desire or request that when her brother John dies, he may devise or "leave it to Ernest Ferduns family." The testatrix does not say "*I* leave it to Ernest Ferduns family." There is no language in the will indicating that the testatrix, herself, was conveying the fee in that particular land to the Ferdun family. After giving to her brother John, by the first clause of the will, all the real property and the remainder of the stocks, bonds and money of the estate, with certain designated exceptions, she advises him not to sell the Ferdun and Blodgett Vineyard, but to "hang on to it." She follows that statement by saying, with respect to the "Addie

Ferdun vineyard," "you keep *as long as you live,* at the time of *your death John* [you] leave it to Ernest Ferduns family."

Following the foregoing-quoted language, which we construe to be a mere request for John H. Plummer to will or leave the "Addie Ferdun vineyard" to the five children of Ernest Ferdun, when he dies, is the sentence, "Clarence Ferdun to be Executor of that ranch." The last sentence seems to reinforce our conclusion that the previous language was a mere request for John to will that ranch to the children of Ernest Ferdun, when he died. Apparently the last-quoted sentence was intended as a further request to appoint Clarence Ferdun "Executor" *of the will* when John made it. No doubt that is what the testatrix meant by that language. Otherwise, that sentence would be meaningless, for the testatrix could not make Clarence *executor of a ranch* which she had given to John H. Plummer. That would be anomalous.

■ There is no language in the will which may be construed to create a testamentary trust in the Addie Ferdun vineyard or in any other property of the estate. The necessary elements to create a trust are not stated. (Civ. Code, § 2221.) No purpose for the creation of a trust is mentioned. Nor is the duration of a trust stated. The word "trust" or "trustee" is not used in the will. We are satisfied there was no intention to create a testamentary trust by the mere statement that Clarence Ferdun was to be "Executor" of a particular ranch.

We conclude that the probate court correctly construed the will as a devise of all the real property of the estate, in fee, to John H. Plummer, the brother of the testatrix, and that the language with relation to the Addie Ferdun vineyard is the mere expression of a wish, desire or request that the testatrix's brother would will that ranch to the children of Ernest Ferdun when he died, which language is precatory in nature and ineffectual to modify or reduce the former devise in fee to a mere life estate in that ranch.

Numerous California cases, and those from other jurisdictions, have held that similar language of wills, addressed to the beneficiaries of particular devises, is precatory in effect, which may, therefore, not change or modify previous absolute gifts of real property in fee. In this case the very first declaration of the will is that, "Everything I own I leave to my Brother, 'John Henry Plummer,'" with the exception of certain specified legacies and bequests of money, stocks, bonds and personal effects. The Addie Ferdun ranch is not included in those enumerated exceptions. (*Estate of Marti,*

132 Cal. 666, 671 [61 P. 964, 64 P. 1071] ; *Estate of Mitchell,* 160 Cal. 618 [117 P. 774] ; *Adams* v. *Prather,* 176 Cal. 33, 38 [167 P. 534] ; *Estate of Cook,* 58 Cal.App.2d 376 [136 P.2d 338] ; *Estate of Sack,* 88 Cal.App.2d 791 [199 P.2d 420] ; *Estate of Hull,* 77 Cal.App. 792 [247 P. 1093] ; *Estate of Miles,* 72 Cal.App.2d 336, 343 [164 P.2d 546] ; *Estate of Mallon,* 34 Cal.App.2d 147 [93 P.2d 245] ; 69 C.J. §§ 1132, 1133, p. 78 ; 19 Am.Jur. § 120, p. 576.)

In *Estate of Cook, supra,* the holographic will provided that, ''All I have goes to Ethel the best wife a man could have. . . . At her death I would like my sister and brothers ~~and~~ get at least $2000.00 each of my money and the balance to go to my daughter.'' On the assumption that the will created only a life estate in the widow, the probate court ordered the legacies to be paid out of the estate. From that order the administratrix appealed. On appeal, that order was reversed. The appellate court quoted with approval from the opinion in *Estate of Marti, supra,* as follows :

'' '. . . While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms.' ''

Commenting on that rule, the appellate court said :

''From our study of the cases it appears that the rule, broadly stated, is that when the person to whom a request is directed has nothing to do but to carry it into effect, which is usually true in the case of an executor, it will be deemed mandatory, but that if the desire is so stated as to indicate the testator's intention to merely influence and not control some future action to be taken by the person addressed, as is usually the case where such person is a beneficiary, the expression will be construed as precatory or as not effecting a testamentary disposition.''

Applying that rule to the will in the *Estate of Cook,* the court said that the reference in the will to payments of $2,000 to each of testator's brothers and sister ''means that the testator was attempting to influence the discretion of someone *who would have the power to dispose of what remained* of the estate upon the death of his wife.'' (Italics added.) Following the rule announced in the *Estate of Marti,* the appellate court held in the Cook case that the language relied upon was precatory and ineffectual to change the absolute gift of testator's

entire estate to his wife. The decree of the probate court was therefore reversed.

In the present case the rule appears to be more clearly applicable for the language in controversy is specifically addressed to the testatrix's brother. She says, ''at the time of *your death John* [you] leave it to Ernest Ferduns family.'' That language follows some friendly advice to her brother regarding that ranch and the Ferdun and Blodgett vineyard. In the Cook case the testator did not address his wife by name. He merely said ''at *her* death I would like my sister and brothers'' to get $2,000 each. Nevertheless, that language was held to be precatory and ineffectual.

In conformity with the preceding cited authorities, the text in 69 Corpus Juris, at page 79, section 1133, reads in that regard:

''. . . Distinctions have been drawn between expressions of desire directed to beneficiaries, to executors, and to trustees. A wish directed to a beneficiary is generally regarded as precatory, unless clearly the words express the testator's intention to the contrary; . . . .''

In 19 American Jurisprudence, at page 576, it is likewise said in that regard:

''Where there is an absolute or unlimited devise or bequest of property, a subsequent clause expressing a wish, desire, or direction for its disposition after the death of the devisee or legatee will not defeat the devise or bequest or limit the estate or interest in the property to the right to possess and use during the life of the devisee or legatee. The absolute devise or bequest stands, and the other clause is to be regarded as presenting precatory language. The will must be interpreted to invest in the devisee or legatee the fee simple title of the land and the absolute property in the subject of the bequest.''

We conclude that all of the real estate belonging to the testatrix was devised by the terms of the will to her brother John H. Plummer, in fee, unlimited by the subsequent precative language of the will with respect to the ''Addie Ferdun vineyard,'' and that the trial court therefore properly distributed the real property to the devisee, John H. Plummer.

The decree of final distribution is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 3, 1949, and appellants' petition for a hearing by the Supreme Court was denied June 27, 1949. Traynor, J., voted for a hearing.