[S. F. No. 17748. In Bank. Dec. 21, 1950.]

Estate of GEORGE ANTHONY KEARNS, Deceased. MAR-
JORIE MALLARINO et al., Appellants, v. EMMA
TRAUNG HAMMERSMITH, Respondent.

Elmer P. Delany, William A. Sullivan, Martin J. Jarvis and Richard O. Graw for Appellants.

Marshall E. Leahy, John F. O'Dea, Philip S. Ehrlich and R. J. Hecht for Respondent.

GIBSON, C. J.—This appeal is taken by Marjorie Mallarino and Lois Graham from an order of the probate court which instructed respondent executrix with respect to the interpretation of the holographic will of George A. Kearns, the material portions of which are as follows:

"1—I hereby bequeath to my beloved and devoted fiancé Emma Traung Hammersmith of the City and County of San Francisco, California, all my real and personal property and

belongings that I possess or are due me of whatsoever nature.

"2—I hereby appoint my fiancé Emma Traung Hammersmith sole executor of my Estate and to perform such duties without bond.

"3—I hereby bequeath to my brother, William L. Kearns $1.00 also to my niece Mrs. Marjorie Mallarino $1.00 and my niece Mrs. Lois Graham $1.00 and should any or either of them contest this will it shall avail them nothing.

"4—I hereby direct my Executor, Emma Traung Hammersmith to provide for my brother William L. Kearns, during his life and I depend entirely on her judgment, kindness, honesty and generosity to act as his provider in illness and in health.*

"5—I hereby direct my Executor Emma Traung Hammersmith to provide for my nieces Mrs. Marjorie Mallarino and Mrs. Lois Graham as her judgment, kindness and honesty sees fit to do, and likewise to provide for any other kin or close friend which in her judgment warrants same."

At the hearing on the petition for instructions, after refusing to admit extrinsic evidence on the ground that the will is not ambiguous, the court instructed the executrix that clause 5 does not create any interest in favor of appellants.

Appellants contend that the provisions of clause 5 are mandatory rather than precatory and create a trust or equitable charge for appellants' benefit. They also argue that the court erred in refusing to admit extrinsic evidence to aid in construing the will. Respondent contends that the will, without ambiguity, shows a clear intent to make an absolute bequest to her and to repose in her an uncontrolled discretion to use the property for her own benefit or to assist others in accordance with the testator's recommendations.

In order to warrant a holding that either a trust or equitable charge was created it must appear that the testator intended to impose mandatory duties upon respondent. (See *Estate of Price*, 138 Cal.App. 462, 464 [32 P.2d 994]; 4 Page on Wills [3d ed., 1941] 230; Thompson on Wills [3d ed., 1947] 727; 26 Cal.Jur. 1041.) It is obvious that clause 1 of the will, standing alone, would operate to bequeath the property to respondent absolutely. On the other hand clause 5 directs respondent to provide for appellants as she sees fit, and the

---

*The brother, W. L. Kearns, died before the present proceeding was begun and no instructions were sought concerning the provisions of clause 4.

first question to be answered is whether the words used therein limit the estate created in clause 1 and impose enforceable duties on respondent, or whether they merely place her under a moral obligation to provide for appellants.

 The authorities all agree that where, as here, an absolute estate has been conveyed in one clause of a will, it will not be cut down or limited by subsequent words except such as indicate as clear an intention therefor as was shown by the words creating the estate. (*Estate of Marti*, 132 Cal. 666, 672 [61 P. 964, 64 P. 1071].) This rule is codified in section 104 of the Probate Code, which provides: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."

There can be no question that the intention expressed by the testator in clause 5 is not on its face as clear and unequivocal as that shown by the absolute bequest in clause 1. Clause 5 contains language having both mandatory and precatory implications. The expression "I hereby direct" is ordinarily treated as mandatory, but it must not be read out of context, and if it appears from other provisions of a will that the testator intended by the use of the phrase to express only a wish, desire, or recommendation, those words will be treated as precatory rather than mandatory. (*Estate of Farelly*, 214 Cal. 199, 204-205 [4 P.2d 948]; *Estate of Hull*, 77 Cal.App. 792, 793 [247 P. 1093]; *In re Jansen*, 181 Wis. 83 [193 N.W. 972, 49 A.L.R. 5].)

 In determining whether the intent was to impose a legally enforceable duty or a mere moral obligation, the courts have taken into consideration whether the direction or request is given to an executor or legatee. Where the person addressed is the executor even language which might otherwise be considered as being merely precatory has been treated as being mandatory. (See *Estate of Lawrence*, 17 Cal.2d 1, 7 [108 P.2d 893]; *Estate of Browne*, 175 Cal. 361, 362 [165 P. 960].) On the other hand, under certain circumstances the expression "I direct" has been held to be merely precatory when addressed to a legatee. (*Estate of Farelly*, 214 Cal. 199, 204 [4 P.2d 948]; *Estate of Hull*, 77 Cal.App. 792, 793 [247 P. 1093]; *In re Jansen*, 181 Wis. 83 [193 N.W. 972, 49 A.L.R. 5]; note, 49 A.L.R. 10, 60.) Where the person directed to carry out the wishes of the testator is both executor and legatee,

the courts in construing the effect of the language have refused to follow the strict rule which imposes a mandatory duty on the executor and have apparently treated the words as being addressed to him in his capacity as legatee. (*Estate of Marti,* 132 Cal. 666 [61 P. 964, 64 P. 1071]; *Estate of Miles,* 72 Cal.App.2d 336 [164 P.2d 546]; see 70 A.L.R. 326, 328; *cf. Estate of Logan,* 29 Cal.App.2d 60 [84 P.2d 245]; *Estate of Goldthwaite,* 140 Cal.App. 551 [35 P.2d 1050].) In the present case, although clause 5 is directed to "my executor Emma Traung Hammersmith," she is both legatee and executrix, and the term "executor" may not have been used in its technical sense to designate the capacity in which she was to act in exercising her discretion. ■ Words must be construed in conformity with the intention of the testator, and especially where, as here, the will is not drawn by an attorney, that intention should not be defeated by strict adherence to the technical sense of the words used. ■ If the words are repugnant to the clear intention disclosed by the other parts of the instrument, they may be regarded as surplusage or restricted in application. (See *Estate of Akeley,* 35 Cal. 2d 26, 28-29 [215 P.2d 921]; *Estate of Budd,* 166 Cal. 286, 296-297 [135 P. 1131].)

The question is also presented whether, looking at the whole of clause 5, any implication of a command arising from the opening words is weakened by the remainder of the clause under which respondent is to provide for appellants "as her judgment, kindness and honesty sees fit to do." Respondent argues that the broad discretion given to her in clause 5 is inconsistent with an intent to create a trust or equitable charge and in support of her position relies upon the early case of *Lawrence* v. *Cooke* (1887), 104 N.Y. 632 [11 N.E. 144]. In that case the testator gave the residue of his estate to his daughter and in a separately numbered clause stated: "I enjoin upon her to make such provision for [my] grandchild out of my residuary estate now in her hands, in such manner, at such times, and in such amounts as she may judge to be expedient and conducive to the welfare of said grandchild, and her own sense of justice and Christian duty shall dictate." It was held that no trust was created.

Appellants, on the other hand, rely on *Colton* v. *Colton,* 127 U.S. 300 [8 S.Ct. 1164, 32 L.Ed. 138], a diversity of citizenship case arising in California, where it was held that a trust was created although the legatee was given broad discre-

tionary power and the words addressed to her were less imperative than those used in *Lawrence* v. *Cooke, supra*. In the Colton case a gift to the wife of all of the testator's property was immediately followed by the provision: "I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best." ■ The interpretation of wills, of course, is not a question upon which the federal courts control the state courts, and some California cases have said that since the words addressed to the legatee in the Colton will were only recommendatory in character, that decision is out of harmony with the modern rule and does not represent the view of the courts in this state. (See *Estate of Loud,* 70 Cal.App.2d 399, 404-405 [161 P.2d 49] ; *Estate of Lee,* 104 Cal.App. 15, 17-18 [84 P. 948].) The case has also been distinguished upon the ground that, as stressed in the opinion, the bequest there involved was immediately followed by the words which were held to create a trust. (*Estate of Marti,* 132 Cal. 666, 670-671 [61 P. 964, 64 P. 1071].) An important factor, however, which has apparently been overlooked in cases which criticize the Colton decision, is that the court there had before it extrinsic evidence of the circumstances under which the will was made and relied upon such evidence in construing the instrument and holding that a trust was intended.

The cases sometimes reach contrary results in construing similar language, and it is difficult, if not impossible, to harmonize them, although they all agree that the primary object is to ascertain and give effect to the intention of the testator. The differences in result may in many instances be explained by the particular circumstances surrounding the execution of the will.

■ It appears to be settled in California that if the intention of the testator is to leave the whole subject as a matter of discretion to the good will and pleasure of the legatee, and if his directions are intended as mere moral suggestions to aid that discretion but not absolutely to control or govern it, the language cannot be held to create a trust. (See *Kauffman* v. *Gries,* 141 Cal. 295, 300 [74 P. 846] ; *Estate of Mitchell,* 160 Cal. 618, 622 [117 P. 774] ; *Estate of Marti,* 132 Cal. 666, 669 [61 P. 964, 64 P. 1071].) ■ The fact, however, that a legatee is given broad discretionary powers will not defeat a trust if it is clear that one is intended and the terms are sufficiently certain to permit their enforcement. (See *Estate of Davis,* 13 Cal.App.2d 64 [56 P.2d 584] ; 25 Cal.Jur. 319.)

It is apparent from the foregoing discussion that clause 5 of the will is not on its face equally as clear as the provision in clause 1, and accordingly, in view of section 104 of the Probate Code, it cannot be said that a trust or equitable charge has been created which would limit the absolute bequest to respondent unless the intent of the testator to do so can be shown by extrinsic evidence. Section 104 must be read with section 105 of the Probate Code which provides that "when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding . . . oral declarations" of the testator as to his intentions.

As we have seen there is an uncertainty upon the face of the will as to the application of clause 5, which contains language having both mandatory and precatory implications, and evidence of the circumstances under which the will was made was therefore admissible. In cases involving a similar problem it has been said that the trier of fact may consider such matters as the size of the estate, the property involved in the gift, the circumstances of the parties, and their relation to each other and to the testator. (See *Estate of Marti*, 132 Cal. 666, 671 [61 P. 964, 64 P. 1071]; *Estate of Mitchell*, 160 Cal. 618, 623-624, 625-626 [117 P. 774]; *Estate of Carothers*, 161 Cal. 588, 591-592 [119 P. 926].)

At the hearing on the petition for instructions the trial judge stated that the will was not ambiguous and that he did not wish to hear any extrinsic evidence. Accordingly, no witnesses were called, but a statement was made of the proof which appellants could produce if permitted to do so. Respondent asserts that some of the evidence which appellants state they could produce is not relevant and that some is incompetent under section 105 of the Probate Code. We need not, however, discuss in detail the different items of proof because it is apparent from the record that respondent objected to the admission of any extrinsic evidence and that it was the purpose of the court to exclude all such evidence. Although the statement made by appellants did not amount to a formal offer of proof, none was necessary since the trial court had declared the will was unambiguous and had clearly intimated that no extrinsic evidence would be received. (*Heimann* v. *City of Los Angeles*, 30 Cal.2d 746, 757 [185 P.2d 597]; *Lawless* v. *Calaway*, 24 Cal.2d 81, 91 [147 P.2d 604]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 760 [146 P.2d 905]; *Cami-*

**538**

*netti* v. *Pacific Mut. Life Ins. Co.,* 23 Cal.2d 94, 100 [142 P.2d 741].)

The order is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.