[Civ. No. 24793. Second Dist., Div. Three. Mar. 28, 1961.]

Estate of RICHARD ARTHUR BURRIS, Deceased. JOAN B. ELDRED, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Respondent.

Thomas S. Bunn, Jr., and Wiley D. Bunn for Appellant.

H. Bradley Jones and James C. Maupin for Respondent.

LILLIE, J.—The objector, Joan B. Eldred, appeals from a judgment approving the first and final account and petition for distribution and ordering distribution to her of one-half interest in decedent's estate by way of a trust; she claims no trust for her benefit was ever created and that she is entitled to her share free and clear of any restriction.

With the exception of a stipulation fixing the ages of appellant Joan and her brother, David, no testimony was

offered; the following facts appear in the various documents in the record. Decedent had two grandchildren, appellant, Joan B. Eldred, now 26, and her brother, David Keith Burris, now 8. His great-granddaughter, Vicki, daughter of appellant Joan was born between the execution of the witnessed will, September 21, 1955, and January 30, 1957, the date of the third codicil. Respondent bank is the executor under the will and trustee for the trusts created for David and appellant. A five-page typewritten will dated September 21, 1955, was duly witnessed and executed by decedent; he also executed four holographic codicils dated November 21, 1955, November 1, 1956, January 30, 1957 and March 30, 1958. He died November 6, 1958; all five documents were admitted as his last will and testament.

In article FOURTH of the witnessed will decedent gave one-half of his residuary estate to Joan. Under article FIFTH, decedent gave the remaining one-half of his estate to respondent bank in trust for David, from which he directed it to pay to David certain amounts for a college education and for medical care, maintenance, or support and education, the trust to end when he reaches the age of 21, at which time it shall be distributed to him.

Decedent directed the *first* codicil dated November 21, 1955, "to the Administrators of my Will," and declared therein: "It is my Wish that My Grand Daughters [*sic*] share—Joan Eldred—of My Estate be Paid to Her in Monthly Instalments [*sic*] of $50.00 For each And every Month. In case of Her Death, I wish the Payments to continue to Her Children, If there Are Any. If She leavs [*sic*] No Children (Not By Adoption) What ever May be left of Her Share to Revert to My Estate." In the *second* codicil dated November 1, 1956, addressed: "to the Judge of the Probate Court Ant [*sic*] the Exegetors [*sic*] of My Will," and reciting that he loaned Joan $1,900 and advanced to her several hundred dollars as a gift and does "not wish to discriminate further, beteen [*sic*] My two Grand Children," decedent provided that any unpaid part of the loan to Joan be deducted from her share. The *third* codicil dated January 30, 1957, addressed "to the Probate Court" with directions to "Attach to my Will," declared decedent's acquisition of a great-grand-daughter, Vicki, and specifically provided that should Vicki survive her mother (Joan), Vicki shall inherit Joan's share of his estate; and further, should David survive Vicki and Joan, he shall inherit Vicki's share; should Joan or Vicki

survive David, either shall inherit David's share; *"if and or when David Attains the Age of 21 years" his (decedent's) estate should be divided among his beneficiaries "to Each their share"*; and should David not survive the age of 21, the time of final settlement shall be left "to the discretion of the Court." The *fourth* and last codicil dated March 30, 1958, directed "to the Administrators of My Will on File at Bank of America And trust Co." gave Joan decedent's personal belongings, and further provided that should Joan survive David "[i]f before His 21 Birthday, or any Part of My Estate has not been dispersed that Joan Eldred become my Sole Heir"; and should Vicki survive Joan, Vicki shall receive all of Joan's share.

Among other provisions, the judgment from which Joan appeals ordered an undivided one-half of the residuary estate, plus $950 (amount of the unpaid portion of the loan to Joan) held in trust, be set aside for David's benefit and held and distributed according to certain directions by respondent trustees; and when David reaches 21 the balance shall be distributed by respondent to him. It further ordered the remaining undivided one-half of the residuary estate (minus $950) held in trust, be set aside for Joan's benefit and the sum of $50 per month be paid therefrom to her, such payments to continue until David becomes 21 (provided that if Joan dies before David becomes 21, such share shall be held for, and the $50 payments be paid to, Vicki until David becomes 21), at which time the trust terminates and the corpus shall be distributed to whoever is receiving the $50 per month (provided that if appellant and Vicki shall die before David becomes 21, then the trust estate shall be added to that of David). If David dies before reaching 21 and neither appellant nor Vicki shall be living, Joan's or Vicki's share shall be distributed to decedent's heirs at law. Joan appeals only from that portion of the judgment ordering her share of decedent's estate distributed to her in the form of a trust.

Standing alone, article FOURTH of the witnessed will gave to Joan one-half of the testator's estate. The lower court, however, construed the codicil of November 21, 1955, wherein the testator declared his "wish" that her share be paid to her in monthly installments, to establish a trust for Joan's benefit limiting her enjoyment of the estate and delaying its distribution to her until David reaches the age of 21. Appellant contends that the absolute bequest in article FOURTH controls and that her share should be distributed to her

free and clear of any restrictions; that a testamentary trust for her benefit was not created and, even if it were, such trust violates the rule against perpetuities. Conceding that no particular language or terminology is needed to create a trust and that an otherwise valid trust will not fail for want of a named trustee, appellant's main point seems to be that two requirements—an indicated intention to create a trust, and a transfer of property to a trustee—are lacking. She also claims that the words of the codicil of November 21, 1955, are uncertain and precatory and cannot revoke the absolute bequest in the witnessed will.

We are in accord with the lower court's interpretation of the will and find its construction of the several testamentary instruments to be reasonable and to reflect the true intention of the testator to create a trust for Joan similar to the one he had previously set up for David. A review of the five documents, construed as one instrument (Prob. Code, § 101), reveals the testator's simple plan to benefit both grandchildren equally, made complicated only by his inability to draft an instrument reflecting what he wanted to do. His obvious plan to treat his two grandchildren alike and leave his estate to them in equal shares to be distributed to them in the same manner and at the same time, and the circumstances of the draftsmanship of the instruments in question, justify the conclusion that the testator intended to and did create a trust for Joan's benefit. We also conclude that such an interpretation does violence neither to the rule against perpetuities nor to the statute against restraints on alienation.

However the issue of the testator's intention herein arises, it is clear that in cases of this kind the question of intent is one of fact and, in addition to the words of the instrument, there may be considered in this connection such matters as the size of the estate, the property involved, the relations of the parties to each other and to the testator, and the circumstances of the execution of the documents. (*Estate of Kearns,* 36 Cal.2d 531 [225 P.2d 218]; *Estate of Mitchell,* 160 Cal. 618 [117 P. 774]; *Estate of Marti,* 132 Cal. 666 [61 P. 964, 64 P. 1071].)

It cannot be disputed that originally the testator intended to give Joan one-half of his estate outright and so declared (article FOURTH); and that at the same time, for the remaining one-half of his estate, by proper provision he intended to and did set up the machinery necessary to create a trust for David's benefit, complete with conveyance to a

trustee, directions for its administration, and designation of respondent bank, executor under the will, as trustee (article FIFTH). Formal and effective as the language of this trust provision is, it is certain that it was drafted by someone with a special knowledge of trusts and wills, presumably the bank. However, several months thereafter, the testator changed his mind about giving Joan her share outright and to make his intention in this regard known to his executor, obviously unaided by professional advice, undertook on November 21, 1955, by his own hand and in his own language, to write a codicil to his will in which he in effect declared that he wanted to delay the distribution of Joan's share of his estate and limit its use by her in much the same way he had already done in connection with David's share; and thus sought, by instructing his executor to pay it to her in monthly installments, to create a trust for her benefit such as had previously been set up for him by the bank for David. He directed the codicil "to the Administrators" of his will, and specifically stated therein his "wish" that Joan's share be paid to her monthly in installments of $50. The subsequent codicils not only confirmed this but predicated thereon further provisions even to the extent of providing the termination date of Joan's trust to be the same as that of David's—his 21st birthday, at which time the estate shall be distributed to each of them (third codicil, January 30, 1957). Motivated by his desire to treat both grandchildren alike, without favor to either, and having no "wish to discriminate" between them (second codicil, November 1, 1956), the testator simply decided to delay distribution of Joan's share until David's share could be distributed to him; and the testator did what he as a layman undoubtedly thought was necessary to place both grandchildren in the same position. Since David was then only about 3 years old and the testator had provided that from the trust estate he could draw amounts necessary for medical care, maintenance, support and education, in order to equalize their respective positions he also provided that during the same period Joan's share was being held for her, she (then being about 21 and married) would receive $50 per month, an amount which may or may not exceed those sums which may be paid to David until he is 21.

Two matters of significance are revealed in the five testamentary documents—the testator's clear intent to create a trust for each grandchild, and his lack of knowledge and

skill to later draft a formal trust provision for Joan. It is apparent from the witnessed will—the legal terminology used, its typewritten form and the manner of its execution—that it was drawn by someone other than the testator, who gave the latter advice of a professional nature; and it is just as apparent from the handwritten codicils—their form and language—that they were the product of the home drafts-manship of a layman unaided by a professional hand. Mis-spelling, grammatical errors, the lack of use of accepted trust language and the handwriting therein reflect the efforts of a man not too well educated and of advanced age. And any suggestion that in his codicil he could have copied from or followed the formal language of the trust provision in the witnessed will, ignores the obvious fact that he did not have the latter in his possession—it was ''on File at Bank of America And trust Co.'' as recited by the testator in the fourth codicil. Thus there is little merit to appellant's argu-ment that since the testator in his original will set up a trust for David he would have known how to properly create one for Joan had he so intended, and that the codicil of November 21, 1955, inadequate in its language, lacking clarity and con-taining none of the terms used in connection with David's trust, clearly manifests his lack of intent to create a trust for Joan's benefit. ▮▮▮ Having had someone with profes-sional training draft the witnessed will for him, the testator no doubt was confident that whoever set up the trust provi-sion for David had done so properly. Thus, it does not seem unreasonable for the testator to believe that to create a trust for Joan he had only to inform the executor, who was also David's trustee, of his wish to withhold Joan's enjoyment of her estate to a future date and provide that some amount be paid to her in installments until David's trust terminates; that the machinery already set up in the witnessed will for David and the designated trustee therein could be used to create and administer a trust for Joan; that by withholding the distribution of Joan's share to a future time, he was in effect conveying it to the bank to hold for her, make the monthly payments and ultimately distribute to her; and that his intention would be carried out, having addressed the codicils variously ''to the Administrators,'' and the ''Exege-tors [*sic*].''

▮▮▮ To impose a trust upon the absolute estate conveyed to Joan in the witnessed will, appellant contends it must appear that the testator intended to impose mandatory duties

in connection therewith (*Estate of Kearns,* 36 Cal.2d 531 [225 P.2d 218]); and citing *Estate of Marti,* 132 Cal. 666 [61 P. 964, 64 P. 1071], and other authorities, argues that the words used in the codicil are uncertain and precatory and thus cannot diminish the estate absolutely given in the original will.

Standing alone, article FOURTH—"I give one-half (½) of all my property, . . . to my grandchild, Joan . . ."— would bequeath that portion of decedent's estate to Joan absolutely; therefore, by his first codicil—"It is my Wish that My Grand Daughters share—Joan Eldred—of My estate be Paid to Her In Monthly Instalments of $50.00 For each And Every Month,"—did the testator intend to impose a legally enforceable duty, or merely a moral obligation in connection with the property? █ Although it is true that words of wish, desire, hope or recommendation addressed to a devisee or legatee do not import a command, a trust or a charge (*Estate of Marti,* 132 Cal. 666 [61 P. 264, 64 P. 1071]), and that to create a trust, the declared wish or desire must constitute a direction, imperative and mandatory, such words, under ordinary circumstances precatory in nature, became testamentary and imperative when used in direct reference to the estate and addressed or directed by the testator to his executor; they then, are construed not as a mere request limiting the estate given in absolute terms, but as a command. (*Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893]; *Estate of Miles,* 72 Cal.App.2d 336 [164 P.2d 546]; *Estate of Marti,* 132 Cal. 666 [61 P. 264, 64 P. 1071]; *Estate of Tooley,* 170 Cal. 164 [149 P. 574, Ann.Cas. 1917B 516]; *Estate of Pforr,* 144 Cal. 121 [77 P. 825]; *Estate of Hood,* 57 Cal.App.2d 782 [135 P.2d 383].) The testator addressed the words of the codicil of November 21, 1955, directly to "the Administrators." █ Applying the above rules of construction, it is clear that a trust was created by will—the testator's wish was directed to the administrator (executor) not to a devisee or legatee, and thus became mandatory (*Estate of Collias,* 37 Cal.2d 587 [233 P.2d 554]), creating a legally enforceable duty.

█ Appellant's last contention is that the codicil of November 21, 1955, violates the rule against perpetuities, citing sections 715.2 and 716, Civil Code. Predicating her claim on the provisions of the witnessed will and the codicil of November 21, 1955, she argues that the testator intended to provide for all of her children as contingent beneficiaries

and that her interest might well vest in children as yet unborn.

The lower court construed the intention of the testator to be that his great-granddaughter, Vicki, be the sole beneficiary of Joan's share of his estate in the event of her death; and in accord with the provisions of the last codicil, the court exercised its discretion by decreeing distribution of the estate to the heirs at law of decedent in the event Joan, Vicki and David should die before the latter reaches the age of 21. This allows for no contingent future interests other than in Vicki, clearly a life in being, and we deem such a construction reasonable and proper.

It is obvious that when the witnessed will (giving one-half of decedent's estate to Joan "or her issue by right of representation") and the codicil of November 21, 1955, (directing the $50 payments upon Joan's death to continue "to her children, If there Are Any") were executed, Joan had no children. Sometime thereafter, but prior to January 30, 1957, Joan's first child was born, for on that day the testator declared his acquisition of a great-granddaughter, Vicki. From that time on, although it may well be Joan subsequently had other children, no provision was ever made by him for, nor was any mention made of, Joan's children or issue; on the contrary it is apparent he had no desire or intention to benefit any other child than Vicki for he specifically and in great detail provided solely for Vicki, not only in his third but in a subsequent codicil, his last. Whereas he had theretofore in his witnessed will provided that "her issue" should inherit Joan's share of his estate upon her death, upon Vicki's birth, the testator in his codicil of January 30, 1957, specifically provided "Should She survive her mother Joan Eldred It is My Wish Vicki inherit Her Mother's share of My Estate," and reaffirmed this specific intent to benefit Vicki only, excluding by omission any other children, in his last codicil dated March 30, 1958, in which he again directly and exclusively provided that "Should Joan's daughter Vicki . . . survive her mother . . . Vicki . . . shall receive all her mother's share of My Estate."

For the foregoing reasons the judgment is affirmed.

Fourt, Acting P. J., and Drapeau, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.