Barnard, P. J., being disqualified, did not participate.

Respondents' petition for a hearing by the Supreme Court was denied July 8, 1946.

[Civ. No. 13035.   First Dist., Div. One.   May 13, 1946.]

MARION R. WELLS, Respondent, v. PAUL DAVID WELLS, Appellant.

Dudley H. Nebeker and Girard N. Richardson for Appellant.

Phil F. Garvey, Owen M. Gentry and Julia M. Easley for Respondent.

PETERS, P. J.—Plaintiff, the former wife of defendant, brought this action to recover certain sums of money allegedly due her under the terms of a written contract entered into as part of what the wife claims, and the trial court found, was a separation agreement. The trial court found that $1,194.35,

plus interest, was due under the contract and entered its judgment in favor of plaintiff in that amount, plus costs. From this judgment defendant appeals, contending that while he executed the contract, the agreement is void in that it constitutes an agreement to assign to plaintiff his earnings from future employment, and therefore violates section 300 of the Labor Code. He urges that the agreement is clear and unambiguous and that the trial court erroneously admitted parol evidence to show that the agreement was actually intended to be, as found by the trial court, a separation agreement to provide for the support of the wife and the minor child of the parties. The parol evidence, if admissible, amply supports the findings.

The agreement in question was entered into in North Carolina and reads as follows:

"THIS INDENTURE, entered into this the 23rd day of October, 1937, by and between Paul David Wells, party of the first part, and Marion R. Wells, party of the second part;

### WITNESSETH:

"That for and in consideration of TEN ($10.00) DOLLARS and for other valuable considerations, the receipt of which is hereby acknowledged, the party of the first part does hereby assign to the party of the second part one-half of the monthly salary which he now earns as an employee or agent of the Charles R. Hadley Company, a corporation with its principal office and place of business at 330 North Los Angeles Street, Los Angeles, California. And the party of the first part does hereby promise and agree that on the 15th of each month hereafter, the party of the second part shall be paid the aforesaid one-half of his month salary, which one-half amounts at the present time to NINETY-NINE ($99.00) DOLLARS; and the party of the first part does hereby agree that on the 15th of each month hereafter or whenever the one-half of his monthly salary shall be paid during each month hereafter, that said one-half of his monthly salary shall not be paid to him by the aforesaid Charles R. Hadley Company, but shall be paid by the said Company direct to the party of the second part and that a check or other instrument of payment for the said one-half of the monthly salary of the party of the first part shall be mailed and sent by the aforesaid Company direct to the party of the second part or to any bank or trust company designated by her and that said check or

other instrument of payment for one-half of the monthly salary of the party of the first part shall not in any event be mailed, delivered or sent to the party of the first part.

"It is the purpose and intent of this instrument to effect a complete assignment and transfer unto the party of the second part of one-half of any salary or wage which the party of the first part may earn during any month hereafter, and to this end, the party of the first part does hereby covenant and agree that not only shall one-half of the amount which he earns each month so long as employed by or representing the above named Company be paid to the party of the second part, but likewise and in the same manner one-half of such amount as the party of the first part may earn when employed by or representing any person, firm or corporation hereafter and one-half of such amount as the party of the first part may earn hereafter in any capacity shall be paid to the party of the second part.

"It Is Stipulated and Agreed, however, that the amount to be paid hereafter to the party of the second part out of the salary, wages or earnings of the party of the first part, shall not in any event exceed the sum of One Hundred and Fifty ($150.00) Dollars per month.

"It Is Likewise Stipulated and Agreed that the amount to be paid to the party of the second part out of the salary, wages or earnings of the party of the first part, shall not at any time or in any month exceed one-half of the total salary, wages or earnings of the party of the first part during such period and in the event the salary, wages or earnings of the party of the first part shall hereafter be or become reduced, then and in that event, the amount paid to and received by the party of the second part shall be proportionately reduced so that the amount received by and paid to the party of the second part shall at no time be more than one-half of the total salary, wage or earnings of the party of the first part.

"In Witness Whereof, the party of the first part and the party of the second part have hereunto set their hands and seals this the day and year first above written.

David

(Signed) Paul D. Wells (Seal)

Marion R. Wells (Seal)

Witness:

(Signed) Alice C. Moore."

Although the agreement was executed in North Carolina neither of the litigants discusses, although the point was suggested at oral argument, the conflict of laws question as to whether North Carolina or California law should govern the interpretation and legal effect of the document. Both litigants assume and are apparently agreed that these matters should be governed by California law. In the balance of this opinion, based on this assumption and implied agreement, we will assume that these matters are governed by California law.

The defendant contends that the above quoted agreement is clear and unambiguous on its face; that it is a mere agreement to assign to plaintiff one-half of his wages from his present and any future employment; that at least as to the portion purporting to assign one-half of his future wages the agreement is void and unenforceable; that it was error of a most serious and prejudicial nature, and violative of the parol evidence rule, to have admitted the evidence upon which the trial court found that the agreement was in fact a separation agreement.

It may be assumed, without deciding, that if the agreement is a mere assignment of a portion of wages earned and to be earned from present and any future employment, it would be void and unenforceable, at least as to the purported assignment of wages from future employment. (Lab. Code, § 300; Civ. Code, § 1045; *Cox* v. *Hughes,* 10 Cal.App. 553 [102 P. 956]; *Orkow* v. *Orkow,* 133 Cal.App. 50 [23 P.2d 781].)

The challenged evidence was admitted, over vigorous objections. It will be noted that the agreement does not even disclose that the contracting parties are husband and wife. It does not disclose that the parties were on the verge of a divorce, that they have a minor child, or that the purpose of the agreement was to provide for the support and maintenance of the wife and child. Nor does it disclose that the agreement was the result of a prior written offer submitted by defendant to plaintiff and accepted by her. It fails to disclose the true consideration, or the circumstances of the parties. These, and other facts, were shown by parol evidence. That evidence was to the effect that on October 23, 1937, the parties were husband and wife and that they had one minor child. The defendant was desirous of securing a divorce. In a letter addressed to his wife he admitted that he was the party at fault and that his wife was in no way at fault, and

requested his wife to secure a divorce. In this letter he stated: "I shall give you enough money each month to support yourself and Betty. I wish you would advise me how much you think would meet your needs. . . .

"Whatever you wish to do with things in Calif. is all right with me. If you wish to sell the house O. K., if not, I'll take it over or you may have it. . . . Let me know . . . how much money you will need to live on, and I shall make arrangements for you." Subsequently, the parties met and talked over their proposed financial arrangements. Shortly before the contract above quoted was entered into the defendant, in writing, submitted the following offer to plaintiff:

"Will give—

$100.00 per month alimony based on present income. If income decreases, alimony will be proportionately decreased. Will assign all rights, title and interest in real and personal property located in Calif., except coin collection and tools. Will assign $10,000 life insurance policy to my daughter, Betty Jane and pay the premiums on same provided I have an income sufficient to pay said alimony and insurance premium."

Plaintiff accepted this offer, and the agreement of October 23, 1937, was executed for the purpose of carrying part of this agreement into effect. Subsequently, the wife secured a divorce. At that time, in reliance on the agreement, she did not ask for alimony or maintenance or support for herself or for their child. As part of the transaction partially disclosed by the agreement of October 23, 1937, the husband assigned to his wife their equity in a house in the city of Alameda, California, and transferred to her personal property consisting of the furnishings in the house and an old automobile. He likewise named his daughter beneficiary of the insurance policy.

At the time the agreement was entered into the husband was employed by the Charles R. Hadley Company of California. He terminated his employment with that company in March of 1938. Immediately after the contract was signed, and starting November 15, 1937, and continuing to April 15, 1942, the husband made arrangements to have half of his salary deposited in the San Francisco Bank to the credit of his wife, and such sums were paid to her. Starting in May, 1942, appellant sent respondent monthly checks for $30 on which he indorsed the following: "This is written solely for the support of my daughter, Betty Jane Wells."

It is an admitted fact that respondent at no time treated the agreement of October 23, 1937, as an assignment, and that she at no time ever presented the document to any employer of appellant, or in any other way attempted to enforce it as an assignment. It is admitted that during the months appellant failed to make the payments provided for in the contract he was gainfully employed, and at the time of trial was still gainfully employed, by the United States Maritime Commission at salaries testified to by appellant. The amount found by the trial court to be due is correctly computed if the contract is enforceable.

There was some correspondence between the parties after the execution of the October 23, 1937, agreement. In a letter dated April 7, 1938, prior to the date the divorce was secured, and in which appellant urges respondent to secure the divorce as quickly as possible, appellant refers to the agreement of October 23, 1937, as "the separation agreement," refers to the supplementary arrangement relating to the Alameda property, and refers to sending respondent certain checks for an attorney's fee as being "in addition to the $99.00 each month as per the terms of the agreement." He then discusses the possibility of respondent securing a separate maintenance decree in place of a divorce, and states: "You say that each of these attorneys have advised you to sue for separate maintenance. That is absurd that they should so advise you because in the first place it would only be thrown out of the courts on the basis that you had a separate agreement that had not been breached by anyone except yourself, and which was far more liberal than a separate maintenance judgment which any court would have allowed you." He then states that even if respondent secured a separate maintenance decree she could not collect under it. He concludes that he has no intention to refuse "to support you and Betty," but that she should get a divorce at once, in which event "I shall do everything in my power to see that you and Betty get the support I have agreed to give you. . . . If you have ever been sincere in your promises, or have accepted the separation agreement in good faith, here is your chance to show it." On other occasions, and in other correspondence appellant referred to the transaction as a separation agreement.

Based on this evidence the trial court found that the agreement of October 23, 1937, was made, executed and delivered

for the purpose of providing for the support and maintenance of respondent and the minor child of the parties; that such agreement was made, executed and delivered for the purpose of settling the property rights of the parties; that such contract was not an assignment of wages, salary or earnings and was not intended by the parties to be such; that there was $1,194.35 due under the contract.

The appellant assumes that the above quoted agreement is clearly an agreement for the assignment of wages, and argues that where a contract is clear on its face it is error to admit parol evidence for the purpose of ascertaining the intent of the parties. There has been much written on this subject and it is quite apparent that there is some difference of opinion among the members of the Supreme Court of this state on this issue. (See *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665], concurring opinion p. 776; *Estate of Rule,* 25 Cal.2d 1 [152 P.2d 1003], dissenting opinion p. 17; see, also *Ermolieff* v. *R. K. O. Radio Pictures,* 19 Cal.2d 543 [122 P.2d 3]; see, also, an article by James P. McBaine entitled *"The Rule Against Disturbing Plain Meaning of Writings,"* 31 Cal. L. Rev. 145; an article by Oliver Wendell Holmes entitled: *"The Theory of Legal Interpretation,"* in 12 Harv. L. Rev. 417; 9 Wigmore on Evidence (3d ed.) §§ 2458-78.) Much can be said in support of the rule that parol evidence is not only admissible to explain an ambiguity appearing on the face of the document but is also admissible to show that what appears to be a perfectly clear agreement, in fact meant something entirely different to the parties. This seems to be the theory of our statutory law. Section 1856 of the Code of Civil Procedure provides that except in the cases of mistake or imperfection of the agreement, or where the validity of the agreement is in fact in dispute "no evidence of the terms of the agreement other than the contents of the writing" is admissible, but that "this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in § 1860." Section 1860, without limitation, provides: "For the proper construction of an instrument the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

The function of all interpretation is, of course, to try

to ascertain the true intent of the parties. Parol evidence should not be admitted to vary, to add to, or to subtract from the terms of a written agreement, but it should be, and is admissible, to explain what the parties meant by what they said.

We do not find it necessary to determine whether the limited or the more liberal rule is in force in this state. This is so, because, in the instant case, even under the most limited rule, parol evidence was admissible to interpret the contract. The first sentence of the agreement refers to "other valuable considerations." It is elementary, of course, that the true consideration may always be shown by parol. The parol evidence shows that the true consideration was that these parties were husband and wife and that this agreement was in fact part of a separation agreement. When the true consideration is once shown the ambiguous nature of the document at once appears. The first paragraph appears to be an assignment of one-half the salary earned by one contracting party from his present employment. The second paragraph refers not only to present employment but also to future employment and also to "one-half of such amount as the party of the first part may earn hereafter in any capacity." This apparently applies to earnings other than from present and future employment, and itself creates an ambiguity. The third paragraph fixes the maximum payment at $150 a month, while the fourth paragraph fixes the rights of the parties in the case of a reduction in the earnings of Paul Wells. When it is once disclosed that this contract was in fact drafted as part of a separation agreement it is quite apparent that the agreement is ambiguous in that it is not clear whether it only provided for an assignment, which it may be assumed was in part unlawful, but also contained the agreement of appellant to pay respondent one-half of his wages or earnings for her support. Parol evidence, even under the most limited rule, was admissible to explain this ambiguity. The rules applicable to such a situation were clearly stated in *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665], as follows: "As an aid in discovering the all-important element of intent of the parties to the contract, the trial court may look to the circumstances surrounding the making of the agreement [citing many authorities], including the object, nature and subject matter of the writing

458

[citing three authorities], and the preliminary negotiations between the parties [citing two authorities], and thus place itself in the same situation in which the parties found them-. selves at the time of contracting. [Citing four authorities.] Also applicable here is the familiar rule that when a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court. [Citing two authorities.] The reason underlying the rule is that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretaion of the terms of the contract, and a practical construction placed by the parties upon the instrument is the best evidence of their intention. [Citing two authorities and quoting from another.]''

■ Measured in the light of these fundamental rules of construction it is at once apparent that the fundamental finding of the trial court that the agreement was a separation agreement by which appellant intended to and did promise to pay to respondent for her support and the support of their child a sum of money to be measured by one-half the husband's earnings, but not to exceed $150 per month, is amply supported by the evidence. It is also quite apparent that what the parties did was to use the form of an assignment simply to fix the extent of the parties' rights, but such form in no way detracts from the fundamental purpose of the agreement which was to give the wife a promise of a certain sum each month as support money. The evidence establishes without conflict that there were prior negotiations between these parties. By letter the appellant promised respondent to give her ''enough money each month to support yourself and Betty.'' Not a word about an assignment is to be found in that letter. Then appellant, in writing, submitted an offer to respondent which she accepted. That offer was to pay respondent $100 per month ''alimony based on present income,'' and to give the real and personal property of the parties to respondent, and to ''assign'' a life insurance policy to the daughter. No mention of an assignment of wages is to be found in that offer. The agreement of October 23, 1937, was executed to carry a portion of this agreement into effect. The evidence then shows that neither party treated the agreement as an assignment of wages. It was never delivered by

respondent to any employer of appellant. Respondent made no claim under it as an assignment. Appellant, months after the execution of the agreement, and while he was paying to respondent the amounts called for by the agreement, by letter, referred to the agreement not as an assignment but as a separation agreement and states that he would see to it that respondent and his daughter ''get the support I have agreed to give you.'' In the light of this evidence is there any doubt at all that the agreement of October 23, 1937, constituted a binding contract by which appellant agreed to pay respondent one-half his salary earnings, not to exceed $150 per month, for her support and the support of the child of the marriage? It is perfectly clear that the agreement was not solely an assignment and never intended as such, but that such form was used simply to designate in a somewhat awkward fashion the extent of appellant's liability. The findings of the trial court are amply supported.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 11, 1946.