[Civ. No. 8545.   Third Dist.   Feb. 11, 1955.]

Estate of WILLIAM E. TUCKER, Deceased.   FLORENCE MEDCALF et al., Appellants, v. DAVID MOSES et al., Respondents.

Fitzgerald, Abbott & Beardsley for Appellant Medcalf.

S. C. Wright and Robert W. Scott for Appellant Appleyard.

Cornish & Cornish and Stanley D. Whitney for Respondents.

PEEK, J.—Two appeals are involved in this proceeding. The first is that of James Appleyard who appeals from that portion of the decree settling the final account and ordering final distribution, wherein it was determined that decedent's will made no provision for appellant's assistance or for his use and benefit. The second is an appeal by the executrix, Florence Medcalf, in her individual capacity, from portions of the same order which decreed she had no right, title or interest in certain personal property.

The only provision of the will here in issue is as follows:

"6. I rely upon my friend Florence Medcalf, to render to my friend James Appleyard, any assistance that he may need."

### APPEAL OF JAMES APPLEYARD

It is the contention of this appellant that by the terms of the above paragraph of the will, a valid and enforceable testamentary provision was made for his benefit; that the language of said paragraph is directed to Florence Medcalf as executrix, and not to her as an individual.

It is well established that in order to make an executor a trustee ". . . it must appear that the testator intended to impose an imperative obligation on him, and for that purpose has used words which exclude the exercise of discretion or option in reference to the act in question." (*Estate of Mitchell*, 160 Cal. 618, 621 [117 P. 774].) Thus to create a valid and enforceable testamentary provision for one's benefit, it must clearly appear that the testator intended to govern and control the conduct of the party to whom the language of the will is addressed, and that he did not design it as an expression or indication of that which he thought would be a reasonable exercise of the discretion which he intended to repose in the one to whom it was addressed. Following this rule the court in the Mitchell case held that the words " 'I rely upon my daughter . . . to make further and suitable necessary provision' " for a granddaughter, and " 'I rely upon my daughter to make at all times suitable and adequate provision for my said granddaughter, believing that my daughter . . . will . . . amply and carefully make provision for her' " did not create a trust for the benefit of the grand-

daughter, nor was it a limitation upon the estate or interest given to the daughter.

Likewise in the present case the testator also *relied* upon Florence Medcalf, not as the executrix of his estate, but as an individual "to render . . . any assistance" that his "friend James Appleyard" might need. Such provisions are utterly inconsistent with an intent to qualify that which the testator gave to Florence Medcalf as an individual, or to impose any charge in the nature of a trust. Nor do any of the circumstances disclosed from the record as a whole call for any different conclusion. This is particularly true in view of the fact that the testator executed three earlier wills—two in 1938 and one in 1948—in which bequests were made to this appellant in the sums of $1,000 and $3,000 respectively.

In the Mitchell estate the court held that so far as such facts have any bearing ". . . they would seem to point to a design not to establish a trust . . . since the testatrix must have been familiar with the proper form of words to create a trust and could easily have done so if she had so desired." Such knowledge is likewise present here in that the testator was an attorney, had served as reporter for the District Court of Appeal for many years, and hence was well qualified to have provided for appellant by way of specific bequest, trust or otherwise, but he did not choose to do so.

Gauged by the yardstick of the Mitchell case, it appears (1) that there can be found no direction, request or recommendation directed to the executrix as such either to pay to Appleyard or hold in trust for him any specific amount, and (2) by reason of the learning and background of the testator, had he so desired in his final will as he did in the two previous wills, made specific provision for this appellant. We conclude that the most which can be said for the provision here in question was that the testator merely adopted it as a means of bringing to the attention of Florence Medcalf as a friend, that he relied upon her discretion to care for and give whatever assistance was necessary to another old friend, James Appleyard. The words so used merely express confidence that Florence Medcalf would so act if and when the need arose; hence the portion of the order attacked by this appellant must be sustained.

### APPEAL OF FLORENCE MEDCALF

This appeal concerns certain shares of common stock of the Signal Oil and Gas Company standing in the name of decedent. It is this appellant's contention that a document

entitled "Letter of Transmittal" was intended by the testator as an instrument transferring to himself and to her in joint tenancy title in said shares of stock; that since the court could not with sureness, from a mere reading of the document, determine its correct interpretation, it was therefore ambiguous, and hence the court erred in denying her the right to introduce extrinsic evidence to show that decedent had thereby made a gift in joint tenancy to her, or that in any event the instrument was sufficient to have shown at least that a tenancy in common resulted.

The face of the document in question is as follows:

LETTER OF TRANSMITTAL

_____ 194_

Security-First National Bank of Los Angeles
Corporate Trust Department
215 West Sixth Street
Los Angeles 14, California

Gentlemen:

I (We) hand you herewith for exchange in accordance with the letter of Signal Oil and Gas Company dated December 1, 1948, certificate(s) for said Company's Class A and/or Class B Capital stock without nominal or par value, as listed below:

CLASS A STOCK

| Certificate Number(s) | Aggregate Number of Shares |
| --- | --- |
| LA 62A5 | 50 |
| LA A526 | 100 |

CLASS B STOCK

| Certificate Number(s) | Aggregate Number of Shares |
| --- | --- |
|  |  |

Please issue the new certificate(s) in the name of the undersigned and deliver as follows:

☐ Against counter receipt          ☐ By mail as indicated in the following space

(Please type or print)

Name: William G. Tucker
c/o Florence Kendall
Address: 479 State Highway
San Francisco
City, Zone and State

Dividend checks to be sent as formerly to William G. Tucker, 1800 Alameda Avenue, Alameda, California.

_____
Signature of Stockholder

NOTE: If you wish to give special instructions with respect to the denominations of the new certificates, please do so on the reverse hereof.

On the reverse side of the document there appears the following typewritten notation: "Please issue in units of 100 shares. W.E.T."

Counsel for this appellant called three witnesses, each from a different bank, and by them introduced for identification and subsequently into evidence, certain joint tenancy signature cards to checking accounts and to safe deposit boxes. The first referred to a joint account in the name of "Mr. W. E. Tucker or Miss Florence Medcalf." The second referred to an individual lease agreement covering a safe deposit box in the name of "William E. Tucker" which thereafter was changed to a "several lease agreement" and appeared in the following form:

> "Tucker, Mr. William E.
> Medcalf, Miss Florence."

Thereafter appellant, as a witness in her own behalf, testified that for approximately 18 years she had served as a secretary for the First District Court of Appeal, during which period she had become acquainted and worked with the decedent who was the official reporter for that court; that following his retirement in 1938, she saw decedent on numerous occasions each week; that she, accompanied by her mother and sister, visited with him in his home and at his ranch in the mountains over weekends; and that on Tuesdays, Thursdays and Sundays, and Monday if it was a holiday, the decedent would have dinner at her home. At this point in her examination a discussion developed between counsel and the court concerning whether or not the document in question was sufficiently clear and unambiguous on its face as to preclude extrinsic evidence. Following an extensive argument off the record, the court declared a short recess, and upon reconvening the court stated: "I am inclined to believe that the state of the record at this time, from the evidence that was adduced by Mr. Kelly on behalf of Miss Medcalf that the decedent was an attorney who had practiced law, we can conclude that he was somewhat familiar with ordinary letters of transmittal and the wording of the document itself . . . and after reading the cases submitted, I am of the opinion that there is no ambiguity, and the court should not permit any intrinsic evidence to explain or vary a written document. I think that would be the correct interpretation." Counsel for appellant then asked as to the "weight" which the court attached to the fact that decedent was a lawyer, to which question the court replied, "I think it has

some weight . . . Now had it been possible to show that the man who executed the letter of transmittal was a person who was unfamiliar with the English language or had never handled a document which in any way had to do with transferring stock or changing the mailing address to which the stock is to be sent, it may have shown some ambiguity; but certainly where you show the man handling these documents day by day or similarly had occasion to be familiar with them, there could be no ambiguity. I don't see how there can be any other ruling."

Following further discussion between counsel it was stipulated that an offer of proof in narrative form could be made by counsel for this appellant, and that objections to such questions were made and sustained. Counsel then offered to prove that Mr. Tucker was approximately 80 years old at the time of his death; that he had not, for a period of probably 8 or 10 years practiced law to any extent except for possibly an occasional probate matter for friends; that prior to December, 1948, he was suffering from cancer and that on January 4, 1949, he went to the hospital in Alameda, where he stayed until the time of his death on or about January 28, 1949; that on or about January 9, 1949, Mr. Tucker told Miss Medcalf at the hospital in Alameda that the document with regard to a split-up of the Signal Oil and Gas Company stock had been received at his house in December prior to his removal to the hospital. He asked her to get that document and spoke to her at the same time about her going through his safe deposit box in the American Trust Company and getting his certificates of stock evidencing shares in the Signal Oil and Gas Company. Appellant went to the American Trust Company in San Francisco and secured from that bank an authorization permitting access to the safe deposit box, following which she went to the bank and removed from the box the two certificates which have the same numbers as those in the so-called letter of transmittal. On or about January 12, 1949, appellant, at Mr. Tucker's directive, went to his home in Alameda and got the transmittal letter which at that time was solely in its printed form, without the typing now set forth thereon. She filled it out in her office in the State Building to the extent that in the box captioned "Please print or type," she typed the following: "William E. Tucker c/o Florence Medcalf, 432 State Building, San Francisco." She also typed on the reverse side, "Please issue in units of 100 shares. W.E.T."

Counsel's narrative further related that appellant took the

certificates to Mr. Tucker's home and filled in the numbers which appear under Class A Stock. When she took the instrument to the hospital and handed it to Mr. Tucker with the two certificates, he told her that that was not what he wanted; that he wanted her to add right on the same line as his name the words "or Florence Medcalf" and said, "This is a joint tenancy. There will be no probate—the stock is yours." Appellant returned on January 15, 1949, typed in the words, "or Florence Medcalf" and added below, "Dividend checks to be sent as formerly to William E. Tucker, 1500 Alameda Avenue, Alameda, California." On January 15, 1949, she brought the two certificates back to Mr. Tucker and also handed him the letter of transmittal in the form in which it now stands with the exceptions of the signature of Mr. Tucker and the pencilled notations on the right-hand side of the page, "Mailing instructions only—issue same as old stock." Mr. Tucker read the instrument over and said, "This is as I want it. This is a joint tenancy. There will be no probate. The Stock is yours." He gave the letter of transmittal to appellant, together with the two certificates which she did not mail to the transfer agent until January 23, 1949. On January 22, 1949, she returned to Alameda Hospital with one Arline Matheron, Supreme Court librarian for a number of years, at which time Mr. Tucker asked Miss Medcalf if she had mailed the stock, to which she replied, "Not yet," and he said, "Do it promptly, I want that attended to." On January 23, 1949, she mailed, in San Francisco, the so-called transmittal letter in the form in which it presently appears except that the writing on the right-hand side and the lines "Mailing instructions only— issue same as old stock" with some letters at the bottom that look like "DJD" did not appear thereon, nor did the figures and the initial "B-56823" in the right-hand corner appear thereon when she mailed it. She also mailed the two stock certificates. Counsel for the opponents stipulated that the letter was mailed and that there was no signature on the reverse side of the stock certificates.

After counsel's offer of proof which was denied, counsel for respondents, on cross-examination, asked this appellant to identify a form letter addressed by Signal Oil and Gas Company to the holders of certain classes of stock, and to state where she had found the same. She answered she had found it among decedent's effects. Her attorney objected on the ground that the court had already ruled against its submission. The court then asked if respondents' counsel was offer-

ing it in evidence, regardless of the adverse ruling at the time of its original offer, to which he replied, "The purpose is to show Mr. Tucker knew, at the time he gave instructions, that in order to make a transfer of any interest in the stock that it was necessary to endorse the certificates of stock." After further discussion the court received the document into evidence.

It thus appears from the record so summarized that although the trial court asserted that the document in question was unambiguous on its face, nevertheless in reaching that decision the court took into consideration some evidence, but foreclosed the admission of the extrinsic evidence offered by this appellant. To sustain the order, therefore, this court must hold as a matter of law, that from a mere reading of the instrument it appears so clear, distinct and unambiguous that a correct interpretation could be reached without resort to extrinsic evidence. (*MacIntyre* v. *Angel,* 109 Cal.App.2d 425 [240 P.2d 1047].) We cannot so hold.

First, the request to "Please issue the new certificate(s) in the name of the undersigned and deliver as follows" raises such questions as: (1) Does "the undersigned" mean the name or names to be inserted in the "box" immediately following, or can it only mean the name which is written on the line above "Signature of Stockholder"? (2) Is the name which appears on the line immediately above the words "Signature of Stockholder" and the name of the party to whom the stock is to be delivered always and of necessity one and the same person? Secondly, in reference to the alternative given by the two small boxes above the larger "box," it is to be observed that the choice "Against counter receipt" is checked off while "By mail" is not checked off. Since the stock was to be delivered "Against counter receipt," i.e., upon the signing of a receipt for the new certificates, could it not follow that Mr. Tucker was not using, and did not intend to use, the larger "box" as mere mailing instructions? Or, if the typewritten matter in the larger "box" did constitute bare mailing instructions, is it likely that Mr. Tucker would give Signal Oil Company or the bank the choice of selecting who, as between "William E. Tucker or Florence Medcalf," should be the addressee? Finally, would not the direction that "Dividend checks to be sent as formerly to William E. Tucker, 1500 Alameda Avenue, Alameda, California," if it is not to be ignored, indicate that the typewritten matter in the larger "box" had some significance beyond the giving of mailing instructions?

"When the language used is fairly susceptible to one of two constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining the true intent of the parties [Citation], not to show that 'the parties meant something other *than* what they said' but to show 'what they meant *by* what they said.' " (*Barham* v. *Barham,* 33 Cal.2d 416, 422 [202 P.2d 289].) In the case of *Sperry* v. *Tammany,* 106 Cal.App.2d 694 [235 P.2d 847], a question was raised concerning the use of the words "and/or" in a certificate of registration of an automobile. The court tersely held, "The term 'and/or' in this case is ambiguous and uncertain." The court then went on to say that although the registration certificate may not be construed to be an instrument in writing by which a person acquires title to an automobile, nevertheless such fact together with other evidence was sufficient to indicate the intention of the parties as to their title to the automobile. A similar situation is presented here. The letter of transmittal was not an instrument of title, but in accordance with this appellant's contention, when considered with the other typewritten matter, could have been adopted and intended to be used as an instrument transferring title and creating a joint tenancy.

It has also been said that ". . . where extrinsic evidence is offered to explain inconsistent provisions in a contract courts should not strain to find a clear meaning in an ambiguous document, and having done so exclude the extrinsic evidence on the ground that as so construed no ambiguity exists." (*Body-Steffner Co.* v. *Flotill Products, Inc.,* 63 Cal.App.2d 555 [147 P.2d 84].) Furthermore, in the case of *Wells* v. *Wells,* 74 Cal.App.2d 449 [169 P.2d 23], the court quite properly noted that "Much can be said in support of the rule that parol evidence is not only admissible to explain an ambiguity appearing on the face of the document but is also admissible to show what appears to be a perfectly clear agreement, in fact meant something entirely different to the parties."

The order appealed from by James Appleyard is affirmed. The order appealed from by Florence Medcalf is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied March 7, 1955, and respondents' petition for a hearing by the Supreme Court was denied April 6, 1955.