[Civ. No. 20010. First Dist., Div. One. Dec. 19, 1962.]

Estate of CORA L. BLACK, Deceased. BANK OF CALI-
FORNIA, as Executor, etc., et al., Petitioners and Re-
spondents, v. UNIVERSITY OF SOUTHERN CALI-
FORNIA et al., Objectors and Appellants.

Timothy A. O'Connor, Arthur W. Walenta, Jr., Stephens, Jones, La Fever & Smith, Walker & Walker, Maurice Jones, Jr., Donald P. Clark, Ronald A. Dwyer and Harrison Walker for Objectors and Appellants.

Thomas J. Cunningham, John P. Sparrow, John E. Landon, Pillsbury, Madison and Sutro, George J. Stepovich, Burnett, Burnett & Somers and John M. Burnett for Petitioners and Respondents.

MOLINARI, J.—This is an appeal from that portion of an ''Order and Decree'' which directed the distribution of the rest and residue of the estate of the above-named decedent to the Regents of the University of California, a respondent herein, to be used at, on, and in the University of California at Los Angeles for educational purposes. A motion by the respondents to augment the record in certain particulars is presented in conjunction with said appeal.

### The Facts

The decedent, Cora L. Black, died in Santa Clara County on December 3, 1957. Following an unsuccessful will contest, brought by persons claiming to be her heirs at law, the decedent's holographic will was admitted to probate. The said will in its entirety reads as follows:

''Los Gatos, California May 2nd 1957

''I, Cora L. Black, Being of sound and disposing mind and Memory make this My last Will and Testament. I cancel all Other Wills made by me.

''To The University of Southern California known as The U.C.L.A. My entire Estate for Educational purposes.

''My Estate consists of Stocks bonds

''The house in which I live is to be sold and the money shall be part of The Estate. All monthly bills shall be paid by The Bank of California Who are to administar This Estate.

''If any claims are made by relatives They are to be given one dollar.

''Signed by me This Second day of May 1957.

Cora L. Black''

The Bank of California, the executor of said will, (hereinafter referred to as the executor) thereafter, in the due course of the probate proceedings, filed a petition for the settlement of its account, the allowance of extraordinary fees, and a petition for the distribution of the estate. Said petition prayed that the whole of said decedent's estate be distributed to the University of California at Los Angeles. Written objections to said petition for distribution were filed by the University of Southern California[1] (hereinafter referred to as "Southern California") and by numerous heirs at law of the decedent (hereinafter referred to as "the heirs"). The basis of the objection made by Southern California was that it was the designated beneficiary under the will. The heirs, on their part, objected that the will was uncertain and ambiguous and accordingly requested that it be so declared and that the property be distributed to them under the laws of intestacy. A motion to strike the objections of the heirs was made by the executor and by the Regents of the University of California (hereinafter referred to as the "Regents"). The Regents appeared in the proceedings as the corporate administrator and operator of the University of California at Los Angeles. No such motion to strike was made as to the objections filed by Southern California.

A hearing was held on these objections on October 3, 1960. The hearing consisted of arguments presented by the attorneys for the interested parties. During the course of the argument two letters which had been written by the decedent were recalled to the attention of the trial court. These letters had been admitted as exhibits by the same trial judge when he presided over the will contest proceedings. Reference was also made to two previous wills which the decedent had executed and which likewise had been introduced in evidence at the trial of the will contest. These documents, which were not offered as evidence during said hearing, nor marked as such, are among the papers, records and exhibits by which it is sought to augment the record before us. Upon the conclusion of the arguments the trial court made certain comments which indicate that it was of the opinion that the will was not ambiguous and that in arriving at this conclusion it was not considering any extrinsic evidence but was construing the

[1]This was the first participation in the proceedings by the University of Southern California.

will only by a reading of the document itself.[2] The appellants did not then nor did they thereafter make any offer of proof. A colloquy followed as to the necessity of findings, whereupon the court continued these and other pending proceedings (the settlement of the account and the matter of attorneys' fees) to the next day at the suggestion of counsel for the executor.[3] Notwithstanding such continuance, the court, on the same day, granted the motion to strike and denied the objections of the heirs and Southern California. This appears from the minute order of the court made on October 3, 1960. Although the reporter's transcript is barren of any order of submission with reference to said objections, the said minute order recites that the objections to distribution by the "Contestants" were submitted and denied, and that the said motion to strike was submitted and granted.

The reporter's transcript discloses that when the matter came on for hearing on the next day the court proceeded to hear the petition for distribution of the estate, the settlement of the first and final account, and the petition for the allowance of extraordinary fees. The heirs and Southern California claim that they were not present at this hearing, it being their contention that their presence was not required with respect to the matters then being heard. They assert further that the hearing on the objections interposed by them had been concluded on the previous day. The reporter's transcript makes no reference to counsel for the heirs or

---

[2] THE COURT: "Now, I don't think any evidence is required to clear up anything in this Will. There is no latent ambiguity, in my opinion. The matter is not ambiguous. I think it is clear.

"MR. DWYER: Your Honor, as you probably know, I am from Stephens, Jones, La Fever & Smith, and we represent the University of Southern California. For the purposes of the record, I would like the Court to indicate if the Court is basing its ruling on the ground that the Will, as it is, is not ambiguous.

"THE COURT: That is what it is. I am just taking the Will from its four corners.

"MR. DWYER: All right, Your Honor.

"THE COURT: Without referring to anything else.

"MR. DWYER: Thank you. I assumed that was it. This may clear it up. Thank you."

[3] "MR. BURNETT: If Your Honor please, because of the probate matter—in order to continue jurisdiction—and I think there is supposed to be one here—can everything be continued to tomorrow afternoon at 2:00 o'clock, and we will just put on very short evidence to settle the account and attorney fees, and then Your Honor can make your formal order at that time, I guess, and then we have to prepare the papers with the findings and facts in them, because I think if it is decided piecemeal, maybe there is a question of losing jurisdiction.

"THE COURT: Make it 1:45 tomorrow."

Southern California being present or participating in the proceedings. Indeed, the minutes of court indicate that they were not present. A trust officer of the executor bank was called as a witness. He testified to the correctness of the account, to the fact that the estate was ready for distribution, and to the justification for extraordinary fees. The only reference to the beneficiary under the will was testimony by said witness that the executor was asking that distribution be made to the Regents "for use of the branch known as U.C.L.A." for educational purposes. During the course of said witness' testimony counsel for the executor offered the "entire probate file and a Minute Order relating thereto" in evidence "in support of the petition. . . ." The court made no comment with respect to the offer nor was the said file marked or admitted as an exhibit. The clerk's transcript discloses that the trial court's action at said hearing consisted of "its order approving the Account and Decree of Distribution" and its orders with reference to said fees. (Minute Order—Tuesday, October 4, 1960.)

On December 20, 1960, an "Order Settling Final Account of Executor, Allowing Commissions to Executor and Attorney's Fees to Attorney for Executor and Decree of Final Distribution" was filed, and the same was entered on December 23, 1960.[4] This order and decree provided, among other things, that the whole of the estate be distributed to the University of California at Los Angeles. On January 5, 1961, the said order and decree was set aside because of clerical errors, and another order and decree was signed on said day and ordered entered *nunc pro tunc* as of December 23, 1960. Among the clerical errors corrected was the substitution of the Regents as the distributee in the place of the "University of California at Los Angeles," the corrected order and decree reciting that under the California Constitution the Regents constitute the public corporation which is empowered to hold property for the University of California and in which title thereto is to be vested. The first order and decree recited that the heirs were "present in Court" by counsel, but made no reference to the presence of Southern California. The order and decree, as corrected, recites that both the heirs and Southern California were "present in Court" and represented by counsel. Both of said "orders and decrees" recite

---

[4]This order and decree contains the statement: "Done in Open Court this 4th day of October, 1960. Signed December 20, 1960," over the judge's signature.

that the matters contained in the decree were tried and argued on both the 3rd and 4th of October, that evidence both oral and documentary, including the entire probate file, was offered, heard and received by the court and that the matters were submitted to the court for decision.

The heirs and Southern California have appealed from the "Decree of Distribution."[5] There appears to be some confusion on the part of the appellants as to which "decree" they are appealing from. Southern California purports to appeal from the "first" decree while the heirs purport to appeal from the "first" decree, as amended. The clerk's transcript discloses that the "first" decree was set aside and a new and corrected decree signed and filed in its stead. Under the posture that the record finds itself there is only one decree of distribution, and this is the decree which was signed on January 5, 1961, and entered in Book 254 at page 1000, and which, by the *nunc pro tunc* order, was directed to be entered as of December 23, 1960. No point has been made on appeal as to the propriety of the respective notices of appeal. The appeal being from the decree, we shall treat it as being one from the only decree extant in the proceedings.

## The Issues

The issues raised on appeal are as follows: (1) Is the will ambiguous? (2) If it is ambiguous, should the court have admitted extrinsic evidence for the purpose of interpreting the ambiguity? (3) If extrinsic evidence was admissible, was such evidence in fact received and properly considered by the trial court? (4) Are the appellants precluded by their failure to make a formal offer of proof?; and, (5) Are the heirs "interested persons" entitled to object to distribution or to appeal?

In its decree the trial court made various findings of fact and conclusions of law, several of which relate to the issues pertinent to the instant appeal.[6] These findings are im-

---

[5]Southern California appeals from the decree entered in Volume 258 at page 381 on December 23, 1960. This appears to be a typographical error. The clerk's transcript reveals that the first "Order and Decree" was entered in volume 254 at page 381, while the "Order and Decree," as corrected, was entered in volume 254 at page 1000 on February 10, 1961. (Although the court's *nunc pro tunc* order directed that it be entered as of December 23, 1960.) The heirs appeal from the decree entered in volume 254 at page 381, on December 23, 1960, as amended on January 5, 1961, and entered in volume 254 at page 1000.

[6]Findings of Fact:
"12) That Southern California is an area of the State of California; that U.C.L.A. is an abbreviation for University of California, Los

portant to our inquiry only if extrinsic evidence was introduced in the court below. ▮ If the construction of the instant will is based upon its terms without the aid of extrinsic evidence its construction is one of law and we are not bound by the trial court's interpretation of it. *(Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257] ; *Ziganto* v. *Taylor,* 198 Cal.App.2d 603, 606 [18 Cal.Rptr. 229].) This rule is likewise applicable where the trial court has interpreted an uncertain or ambiguous term or provision of a written instrument without resort to extrinsic evidence. *(Prickett* v. *Royal Ins. Co. Ltd.,* 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907] ; *Lundin* v. *Hallmark Productions, Inc.,* 161 Cal.App.2d 698, 701 [327 P.2d 166].)
▮ The basis of the rule is that where no extrinsic evidence has been considered there is no issue of fact. It is the duty of an appellate court, therefore, to make the final determination in accordance with applicable principles of law. *(Meyer* v. *State Board of Equalization, supra,* 42 Cal.2d 376, 381; *Estate of Platt, supra,* 21 Cal.2d 343, 352.)

The important consideration in each instance is whether or not extrinsic evidence is admissible. ▮ If it is not a proper case for the introduction of extrinsic evidence, and

Angeles, and that U.C.L.A. is a name by which the University of California, Los Angeles is popularly called ;

''13) That University of California, Los Angeles is one of the campuses or divisions of the University of California ; that the University of California is an educational and charitable institution and a public trust administered under the authority of the Constitution of this State by The Regents of the University of California, a public corporation ; that said corporation The Regents of the University of California is vested with the legal title and the management of the property of the University of California and is empowered to take*n* and hold all real and personal property for the benefit of the University of California or incidentally to its conduct.

''14) That said Will of said decedent shows on its face that she intended to leave her entire estate for educational purposes ;

''15) That there is no latent or patent ambiguity in said Will ;

''16) That said decedent intended by her said Will to designate one charitable agency to administer her entire estate for educational purposes and that the charitable agency said decedent intended to designate for said purposes was the University of California, Los Angeles ; . . . .''

Conclusions of Law :

''7) That the Will of said decedent, hereinabove set forth, is certain and definite on its face and that The Regents of the University of California is the corporation that administers and operates the University of California and the University of California, Los Angeles, and that the estate of said decedent should be distributed in its entirety to The Regents of the University of California to be used at, on and in the University of California, Los Angeles for educational purposes ; . . . .''

none has been considered, then it is also the rule that the interpretation placed upon a written instrument by the trial court, while not binding on appeal, will be accepted by the appellate court if such interpretation is reasonable, or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument. *(Prickett* v. *Royal Ins. Co. Ltd., supra,* p. 237; *Lundin* v. *Hallmark Productions, Inc., supra,* p. 701; *Estate of Northcutt,* 16 Cal.2d 683, 690 [107 P.2d 607]; *Lucas* v. *Quigley Motor Co.,* 191 Cal.App.2d 152, 158 [12 Cal.Rptr. 442]; *Janise* v. *Janise,* 195 Cal.App.2d 433, 440 [15 Cal.Rptr. 742].) On the other hand, where it is a proper case for the admissibility of extrinsic evidence and such evidence has been received, the appellate court will accept or adhere to the interpretation adopted by the trial court *where the parol evidence is such that conflicting inferences may be drawn therefrom. (Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319]; *Munier* v. *Hawkins,* 190 Cal.App.2d 655, 663 [12 Cal.Rptr. 274]; *Transmix Corp.* v. *Southern Pac. Co.,* 187 Cal.App.2d 257, 269 [9 Cal.Rptr. 714].) When the terms or provisions of an instrument are clear and certain, extrinsic evidence to explain or interpret them is not admissible. *(Molybdenum Corp. of America* v. *Kasey,* 176 Cal. App.2d 357, 363 [1 Cal.Rptr. 400].) But if the terms or provisions are ambiguous or uncertain extrinsic evidence may be admissible depending, apparently, on the kind of ambiguity involved. The parol evidence rule (Code Civ. Proc., § 1856) does not apply to every situation where an ambiguity may appear. *(Lundin* v. *Hallmark Productions, Inc., supra,* 161 Cal.App.2d 698, 701.) Whether an instrument is, in any of its terms or provisions, ambiguous or uncertain is a matter of determination, in the first instance by the trial court. *(Lundin* v. *Hallmark Productions, Inc., supra,* p. 701; *Lucas* v. *Quigley Motor Co., supra,* 191 Cal.App.2d 152, 158.)

 It has been generally stated that where the ambiguity is patent parol evidence is inadmissible, but where the ambiguity is latent, such evidence is admissible. (See 18 Cal. Jur.2d §§ 275, 276, pp. 763-767.) A patent ambiguity is one which appears on the face of the instrument. *(Payne* v. *Commercial Nat. Bank,* 177 Cal. 68 [169 P. 1007, L.R.A. 1918C 328]; 18 Cal.Jur.2d § 275, p. 763.) A latent ambiguity is an uncertainty which arises, not by the terms of the instrument itself, but is created by some collateral

matter not appearing in the instrument. (*Pacific Indem. Co.* v. *California etc. Ltd.,* 29 Cal.App.2d 260, 273 [84 P.2d 313]; see Code Civ. Proc., § 1856.) The distinction between patent and latent ambiguities with its incident of excluding or admitting extrinsic evidence, has not been strictly adhered to. Thus ambiguities appearing on the face of the instrument and apparently in the category of patent ambiguities have been explained or interpreted by extrinsic evidence. (*Neff* v. *Ernst,* 48 Cal.2d 628, 635 [311 P.2d 849]; *City of Redlands* v. *Nickerson,* 188 Cal.App.2d 118, 125 [10 Cal.Rptr. 431]; 18 Cal.Jur.2d § 275, pp. 763, 764-765.) ██ Accordingly, in *Estate of Torregano,* 54 Cal.2d 234 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597], it is stated: "Extrinsic evidence is also admissible to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear." (P. 246; citing Prob. Code, § 105.)

### Is the Will Ambiguous?

██ The trial court held that the provision in the decedent's will which states "To The University of Southern California known as The U.C.L.A." is not ambiguous. In reaching this conclusion the lower court did not resort to the aid of extrinsic evidence. This is clear from the narrative above set forth wherein the court stated in no uncertain language that it was considering *only* the provisions and terms of the will itself. Our inquiry must turn, then, to whether the said provision is ambiguous, and if it is, whether such ambiguity is such as to require the admissibility of extrinsic evidence.

██ A word or expression is said to be ambiguous when it is "[d]oubtful or uncertain"; when it is "[c]apable of being understood in either of two or more possible senses;..." (Webster's New International Dictionary (2d ed. 1939).) Ambiguity is defined as "[d]oubtfulness; doubleness of meaning. . . . Duplicity, indistinctness, or uncertainty of meaning of an expression used in a written instrument. . . . Want of clearness or definiteness; difficult to comprehend or distinguish; of doubtful import."[7]

---

[7] "Ambiguity of language is to be distinguished from unintelligibility and inaccuracy, for words cannot be said to be ambiguous unless their signification seems doubtful and uncertain to persons of competent skill and knowledge to understand them. It does not include uncertainty arising from the use of peculiar words, or of common words in a peculiar sense. It is *latent* where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or

86

 The court below correctly concluded that there is no patent ambiguity. The provision in question is not, on its face, susceptible to one of two constructions. The language is clear, intelligible and suggests but a single meaning. A reader unacquainted with the fact that there are two universities in Southern California, one known as the University of Southern California and another commonly referred to by the initials U.C.L.A., would readily attribute to said provision the meaning that it refers to an institution named "University of Southern California," which is also known by the initials U.C.L.A.

The trial court was in error, however, in holding that there is no latent ambiguity. Such an ambiguity is created by a collateral matter not appearing in the will itself. The instant the attention of the lower court was directed to the fact that the University of Southern California is not known by the initials U.C.L.A., but that these designations are applicable to two different universities, there was created a necessity for interpretation as to which one the testatrix meant. Any reader of the will, upon being so apprised, would be cognizant that although the testatrix attempted to designate a sole beneficiary she did in fact name two separate institutions. It would be but to cavil to contend that this language does not engender a doubt and uncertainty as to which institution was meant to be the beneficiary. It is not the words used which cause the doubt and uncertainty but the ascertainment of the intended beneficiary from the words used.

In *Estate of Donnellan*, 164 Cal. 14 [127 P. 166], the court pointed out that there are two classes of wills which present latent ambiguities, for the removal of which resort to extrinsic evidence is permissible, to wit: "The one class is where there are two or more persons or things exactly measuring up to the description and conditions of the will. . . . The other class is where no person or thing exactly answers the declarations and descriptions of the will, but where two or more persons or things in part though imperfectly do so answer." (P. 20.) In *Donnellan*, the following provision was presented for construction: " 'to my niece Mary, a resident

---

more possible meanings, as where a description apparently plain and unambiguous is shown to fit different pieces of property. A *patent* ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used." (Citations omitted). (Black's Law Dictionary (4th ed.) p. 105.)

of New York, said Mary being the daughter of my deceased sister Mary. . . .' '' (P. 16.) The deceased sister, Mary, had two daughters, Annie Sheridan and Mary Smith. Annie was a resident of New York. Mary lived in Ireland and had never been in the United States. The court held that there was a latent ambiguity because no one person exactly fitted the description in the will.

In *Estate of Nunes,* 123 Cal.App.2d 150 [266 P.2d 574], the *Donnellan* case was cited and relied upon. In *Nunes* the provision presented for construction was as follows: '' 'unto Joe E. Nunes, a nephew of mine. . . .' '' (P. 151.) The estate was claimed by a Joseph E. Nunes who occasionally called himself or was called Joe. Joseph E. Nunes was the son of a half brother of the deceased and hence a nephew of the half blood of the deceased. The other claimant was a Joe E. Nunes, who occasionally called himself or was called Joseph. He was a second cousin of the deceased, but was usually referred to by the deceased as his '' 'nephew.' '' (P. 151.) The court held that a latent ambiguity existed because no one person existed who precisely fitted the description of '' 'Joe E. Nunes, a nephew of mine. . . .' '' (P. 158.)

 The basic statutory provision applicable to our inquiry is section 105 of the Probate Code.[8] The limitations of this section do not apply once it is determined that extrinsic evidence is admissible because of a latent ambiguity as to identity. *(Estate of Nunes, supra,* 123 Cal.App.2d 150, 158.) A latent ambiguity as to the identity of the legatee exists in the instant case once it is determined that there is no one university that completely fits the description ''University of Southern California known as The U.C.L.A.'' Extrinsic evidence was therefore admissible to show who was intended. The lower court sought to make an interpretation from the context of the will without the aid of extrinsic evidence. Under section 105 of the Probate Code the court may look to other provisions of the will to determine the meaning of a doubtful provision. But here we have no other provi-

_____

[8]Probate Code section 105 provides: ''When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations.''

sion of the will which touches or can throw any light on the identity of the legatee. The lower court here eliminated one of two possible beneficiaries by an attempt to ascertain the intention of the testatrix from a mere reading of the will. It concluded as a matter of law that the words "University of Southern California" mean " 'the university *in* Southern California.' " (Emphasis added.) In arriving at this conclusion the trial court stated that when the testatrix used the word " 'of' " she meant " 'in,' " and that she meant Southern California in the sense of a geographical area.[9] The court stated further that the capitalization of the word "University" was of no significance because people sometimes capitalize the word and on other occasions they do not.

▮ A court is not at liberty to read the language of a will with any other than its plain, ordinary meaning. (*Estate of Mitchell*, 10 Cal.2d 628, 632-633 [75 P.2d 1048, 76 P.2d 1184].) ▮ Indeed, the words of a will are to be taken in their ordinary and grammatical sense, unless there be a clear intention to use them in another sense and unless that other sense can be ascertained from the will. (Prob. Code, § 106; *Estate of Chamberlain*, 46 Cal.App.2d 16, 19 [115 P.2d 235].) ▮ The lower court has reached its conclusion by a strained construction of the pertinent lan-

---

[9] " 'Southern California is an area. Just because the University of Southern California happened to adopt that name, doesn't mean that the University of Southern California had the exclusive right to the name of Southern California.

" 'Now, if Mrs. Black had said, 'To the university in Southern California,' there would have been no question there at all. There would have been probably no contest. But just because she happened to use the word 'of' instead of 'in' there has been a lawsuit.

" 'Now, some people speak that way. Instead of saying 'in' they say 'of.' We refer sometimes to 'the senator from Southern California,' or 'the senator of Southern California.' If you have been in the Legislature, or you have been in Congress, you use that designation to designate a certain area.

" 'Now, for instance, if Mrs. Black had said, 'To the University of Loyola, known as U.C.L.A.,' now Loyola University is in Southern California, and then there would have been an ambiguity, no question about it. But what she says, when she says, 'To the University of Southern California known as U.C.L.A.,' she was describing an area of the State, and she was· referring to the University of California at Los Angeles. And U.C.L.A. is not a very common designation, U.C.L.A.

" 'Now, Mrs. Black knew what she was doing, and she knew who she wanted to be the object of her bounty, and just because she used the word 'of Southern California,' it was her manner of speech, where she meant 'in.'

" 'Now, some people would have said 'University in Southern California.' Other people would have said, 'University of Southern California,' describing an area.' "

guage. In the face of the fact that it had judicial knowledge that there is a university whose full and proper name is "University of Southern California" it determined to disregard the capital "U" in the word "University" and then proceeded to substitute the word "in" for the word "of." We are not so much concerned with whether the word "of" may also mean "in," but with the propriety of changing a word which is an integral part of a proper name. In our opinion, the trial court was not warranted in making such an interpretation as a matter of law. The very fact that the court questioned the meaning of the words used by the testatrix in itself shows the existence of the ambiguity. Courts should not strain to find a clear meaning in an ambiguous document, and having done so exclude extrinsic evidence on the ground that as so construed no ambiguity exists. *(Body-Steffner Co.* v. *Flotill Products,* 63 Cal.App.2d 555 [147 P.2d 84].) The crux of the matter is that we have a situation which falls in the second class mentioned in *Donnellan,* i.e., no person exactly answers the description "University of Southern California known as The U.C.L.A.," but both the University of Southern California and U.C.L.A., in part, though imperfectly, so answer. This circumstance is sufficient in itself to raise the latent ambiguity. Whether or not the testatrix intended to leave her estate to the University of Southern California or to the university *in* Southern California known as U.C.L.A. was for the determination of the trier of fact upon a consideration of parol evidence.

### Did the Trial Judge Receive and Consider Extrinsic Evidence?

As we have already pointed out the trial judge did not receive or consider any extrinsic evidence. The respondents stretch the tensile strength of our credulity to the breaking point when they urge that such evidence was in fact received and considered. The entire proceeding on the hearing of the objections to distribution consisted of arguments by respective counsel. Notwithstanding the recital in the order and decree that evidence was introduced, such is not the fact. While allusion to certain documents was made during the course of the argument these were not offered or admitted into evidence. To the contrary, the record discloses that the trial court was adamantine in the conclusion that its consideration of the will was restricted to its "four corners." Respondents would also have us believe that the trial court

considered the entire probate file before it made its decision. Although offered in evidence, the file was never admitted into evidence nor marked as an exhibit. Even if we assume, however, that it was considered by the court it is obvious from the record that it was merely offered in conjunction with the hearing of the petition for the settlement of the account and for extraordinary fees. It is likewise apparent from the record, notwithstanding any recital in the decree to the contrary, that neither the heirs nor Southern California was present during this phase of the probate proceeding. The respondents apparently overlook the fact that when this file was offered in evidence the objections to distribution had been submitted and decided adversely to the appellants *on the previous day.* Believing that they have ''a foot in the door'' on the basis that the probate file is in evidence, the respondents now seek to augment the record before us by asking us to include certain papers which they assert are a part of that file. There is no evidentiary record to augment, however, because the lower court did not admit or consider any extrinsic evidence at all. This is all the more apparent when we consider the trial court's holding as a matter of law that there is no latent or patent ambiguity. Such a holding precludes any consideration of extrinsic evidence, or any finding of fact.

### *Was Extrinsic Evidence Properly Brought to the Attention of the Trial Court?*

The respondents urge that a reversal is not warranted, in any event, because the appellants did not protest the trial court's views as to the substance of the case nor did they make any offer of proof in the court below as to the nature of the extrinsic evidence they sought to present. It would be a miscarriage of justice, in our opinion, to uphold a decree in favor of the respondents which itself lacks the necessary support of findings based on sufficient extrinsic evidence merely because the appellants failed to make a formal offer of proof or because they did not protest vociferously. As we have already pointed out the lower court was definitely of the opinion that the will was not ambiguous and it so stated. The trial court's emphatic declaration that the will was unambiguous and that it did not ''think that any evidence is required to clear up anything in this will'' was a sufficient intimation that no extrinsic evidence would be received. Under the circumstances presented by the instant

case a formal offer of proof as to what was expected to be proved by extrinsic evidence would have been an idle gesture. Accordingly, such a specific offer of proof is not a prerequisite to a review by us of the propriety of the exclusion. (See *Estate of Kearns,* 36 Cal.2d 531, 537 [225 P.2d 218]; *Tomaier* v. *Tomaier,* 23 Cal.2d 754, 760 [146 P.2d 905]; *Caminetti* v. *Pacific Mut. Life Ins. Co.,* 23 Cal.2d 94, 100 [142 P.2d 741].)

*Are the Heirs Persons Interested in the Estate Within the Meaning of Section 1020 of the Probate Code?*

The respondents contend that the heirs are not interested persons within the meaning of Probate Code section 1020.[10] This objection is being urged for the first time on appeal and was not made in the lower court. The basis of the claim is that even if this court should reverse the trial court's determination the heirs cannot take under the will because they are not therein named. The gist of respondents' argument is that if, after taking extrinsic evidence, the court is unable to interpret the provision in question it must strike that portion of the will and thereupon give vigor to the portion reading, ''My entire Estate for Educational purposes'' under the *cy pres* doctrine. While it is probable that upon the introduction of extrinsic evidence one of the two named universities will be ascertained as the ultimate beneficiary, or that a general charitable intent will be shown, the heirs are not precluded from recovery as a matter of law. Extrinsic evidence may show that the testatrix intended that one institution should benefit and no other, thus negativing a general charitable intent, but leaving the identity of that institution so uncertain as to require an intestacy. (See *Estate of Zilke,* 115 Cal.App. 63 [1 P.2d 475].) It should be noted, furthermore, that there is a reluctance by the courts to apply the *cy pres* doctrine where a gift fails *ab initio. (Estate of Zilke, supra,* 115 Cal.App. 63; *Bowden* v. *Brown,* 200 Mass. 269 [86 N.E. 351]; *Brown* v. *Condit,* 70 N.J. Eq. 440 [61 A. 1055]; *Duncan* v. *Higgins,* 129 Conn. 136 [26 A.2d 849]; *Horton* v. *Board of Education,* 32 Wn.2d 99 [201 P.2d 163]; Rest. 2d Trusts, §§ 395, 399, pp. 282, 297.) A generalized charitable purpose must be demonstrated in order to apply *cy pres.* This purpose hinges upon a dominant

[10]Probate Code section 1020 provides for the final settlement of accounts and distribution of estates, and states: ''Any person interested in the estate . . . may resist the application.''

intent on the part of a testator to devote his property to some charitable use. *(Duncan v. Higgins, supra.)* Certainly such a purpose, which relies so heavily upon the testator's intention, should be ascertained and determined likewise upon a consideration of extrinsic evidence.

The exclusion of extrinsic evidence in the instant case constitutes reversible error. *(Estate of Nunes, supra,* 123 Cal.App.2d 150; *Estate of Tucker,* 130 Cal.App.2d 699 [279 P.2d 760].)

The order and decree appealed from is reversed. The respondents' motion to augment the record is denied.

Bray, P. J., and Sullivan, J., concurred.